**Electronically Filed
Supreme Court
SCWC-30700
21-OCT-2015
08:45 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

GERARDO DENNIS PATRICKSON; RODOLFO BERMUDEZ ARIAS;
BENIGNO TORRES HERNANDEZ; FERNANDO JIMENEZ ARIAS; MELGAR
OLIMPIO MORENO; LEANDRO SANTOS; HERMAN ROMERO AGUILAR; ELIAS
ESPINOZA MERELO; CELESTINO HOOKER ERA; ALIRIO MANUEL MENDEZ
and CARLOS HUMBER RIVERA, individually and on behalf of
others similarly situated, Petitioners/Plaintiffs-Appellants,

vs.

DOLE FOOD COMPANY, INC.; DOLE FRESH FRUIT COMPANY; DOLE FRESH
FRUIT INTERNATIONAL, INC.; PINEAPPLE GROWERS ASSOCIATION OF
HAWAII; AMVAC CHEMICAL CORPORATION; SHELL OIL COMPANY; DOW
CHEMICAL COMPANY; and OCCIDENTAL CHEMICAL CORPORATION,
(individually and as successor to Occidental Chemical Company
and Occidental Chemical Agricultural Products, Inc., Hooker
Chemical and Plastics, Occidental Chemical Company of Texas and
Best Fertilizer Company); STANDARD FRUIT COMPANY; STANDARD FRUIT
AND STEAMSHIP COMPANY; STANDARD FRUIT COMPANY DE COSTA RICA,
S.A.; STANDARD FRUIT COMPANY DE HONDURAS, S.A.; CHIQUITA BRANDS
INC.; CHIQUITA BRANDS INTERNATIONAL, INC., (individually and as
successor in interest to United Brands Company, Inc.); MARITROP
TRADING CORPORATION; DEL MONTE FRESH PRODUCE N.A., INC.
(incorrectly named as Del Monte Fresh Produce N.A.); DEL MONTE
FRESH PRODUCE COMPANY; DEL MONTE FRESH PRODUCE (HAWAII) INC.,
(incorrectly named as Del Monte Fresh Produce Hawaii, Inc.); DEL
MONTE FRESH PRODUCE COMPANY and FRESH DEL MONTE N.V.,
Respondents/Defendants-Appellees.


DOLE FOOD COMPANY, INC., Defendant/Third-Party Plaintiff-
Appellees, vs. DEAD SEA BROMINE CO., LTD and BROMINE COMPOUNDS
LIMITED, Third-Party Defendants-Appellees.

_____

SCWC-30700

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(ICA NO. 30700; CIV. NO. 07-1-0047)

OCTOBER 21, 2015

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

This appeal challenges the circuit court's grant of partial summary judgment against Plaintiffs on statute of limitations grounds.  At issue on certiorari is whether the filing of a putative class action in another jurisdiction operated to toll this state's statute of limitations, and, if so, at what point, under the particular circumstances of this case, did such tolling end.  We hold that the filing of a putative class action in another jurisdiction does toll the statute of limitations in this state, as such "cross-jurisdictional tolling" supports a primary purpose of class action litigation, which is to avoid a multiplicity of suits.  See Levi v. University of Hawaiʻi, 67 Haw. 90, 93, 679 P.2d 129, 132 (1984) ("One of the purposes of a class action suit is to prevent multiplicity of actions, thereby preserving the economies of time, effort and expense.  This objective can be effectively achieved only by allowing the proposed members of a class to rely on the existence of a suit which protects their rights.").

Further, under the unique circumstances of this case, cross-jurisdictional tolling ended when the foreign jurisdiction issued a final judgment that unequivocally dismissed the putative class action.  In this case, Plaintiffs' Complaint was filed within two years (the applicable limitations period) of the filing of the final judgment and, therefore, was not time-barred.  Accordingly, we hereby vacate the ICA's judgment on appeal, which affirmed the circuit court's[1] final judgment, entered pursuant to its order granting partial summary judgment against the Plaintiffs and in favor of the Defendants, and we remand this case to the circuit court for further proceedings consistent with this opinion.

## II.  Background

### A.  The History of DBCP Litigation

This case involves dibromochloropropane ("DBCP"), a powerful nematocide, or nematode worm killer.  The Ninth Circuit described DBCP as follows:

> Tough on pests, it's no friend to humans either.  Absorbed by the skin or inhaled, it's alleged to cause sterility, testicular atrophy, miscarriages, liver damage, cancer and other ailments that you wouldn't wish on anyone.  Originally manufactured by Dow Chemical and Shell Oil, the pesticide was banned from general use in the United States by the Environmental Protection Agency in 1979.  But the chemical companies continued to distribute it to fruit companies in developing nations.

Patrickson v. Dole Fruit Co., Inc., 251 F.3d 795, 798 (9th Cir. 2001).  Although much of the following history of the multi-

---

[1]    The Honorable Gary W.B. Chang presided.

jurisdictional DBCP litigation is not contained in the record, it has been extensively chronicled in published (and unpublished) opinions from other jurisdictions.  The instant case "represents one front in a broad litigation war between these plaintiffs' lawyers and these defendants."  Id.

### 1.     Carcamo and Delgado: The DBCP War Begins in Texas

The war began in August 1993, when "a putative class action, Jorge Carcamo v. Shell Oil Co., was filed in the District Court of Brazoria County, a state court in Texas.  The action . . . defined the putative class as '[a]ll persons exposed to DBCP, or DBCP-containing products . . . between 1965 and 1990.'"  Chaverri v. Dole Food Co., Inc., 896 F.Supp.2d 556, 560 (E.D.La. 2012)(footnote omitted; first ellipsis added; second ellipsis in original.

On March 29, 1994, the Carcamo plaintiffs moved for class certification.  Id.  Before the Texas state court could hear the motion, however, the Carcamo defendants removed the case to the United States District Court for the Southern District of Texas ("Texas district court").  Id.  The statutory basis for removal was the Foreign Sovereign Immunities Act ("FSIA"), as there were defendants impleaded into the case who were purportedly owned by the State of Israel.  Id.; see also Marquiniz v. Dole Food Co., Inc., 2014 WL 2197621, *1 (D. Del. May 27, 2014).

After removal, the Texas district court consolidated Carcamo with another DBCP case, Delgado v. Shell Oil Co., originally filed in Galveston County (collectively, the "Carcamo/Delgado case"). Chaverri, 896 F.Supp.2d at 560; Delgado v. Shell Oil Co., 231 F.3d 165, 170 (5th Cir. 2000). The Carcamo/Delgado defendants moved to enjoin any further DBCP litigation anywhere in the United States. Canales Blanco v. Amvac Chemical Corp., 2012 WL 3194412, *2 (Del.Super. Aug. 8, 2012).

### 2. Abarca: Posturing in Florida

Fearing that the Texas district court would grant the Carcamo/Delgado defendants' motion for an injunction against any further DBCP litigation anywhere else in the United States, the Carcamo/Delgado plaintiffs filed, on June 9, 1995, a class action lawsuit entitled Abarca v. CNK Disposition Corporation, on behalf of 3000 individuals, in Florida state court. Chaverri, 896 F.Supp.2d at 562 & 562 n.14. The Abarca plaintiffs never served their Complaint. 896 F.Supp.2d at 562 n.14. In its order dated July 11, 1995 (discussed in greater detail in the next section), the Texas district court entered a narrower injunction than the defendants originally sought, enjoining only the Delgado named plaintiffs from filing any further DBCP complaints in the United States. Canales Blanco, 2012 WL 3194412 at *2; Chaverri, 896 F.Supp.2d at 562 n.14.

5

Therefore, the Carcamo/Delgado plaintiffs, "no longer fearing the broad injunction defendants had requested and prior to them being served, voluntarily dismissed Abarca on July 12, 1995." Canales Blanco, 2012 WL 3194412 at *2.

### 3.    The War Continues in Texas

This brief interlude in Florida thus concluded, the war continued in Texas.  In addition to moving for an injunction against United States DBCP filings, the Carcamo/Delgado defendants had also moved to dismiss the complaints for forum non conveniens ("f.n.c.").  Chaverri, 896 F.Supp.2d at 560.  The Texas district court granted the motion in its "Memorandum and Order" dated July 11, 1995 ("July 11, 1995 order"), and this order is the focus of the instant Application.  Delgado v. Shell Oil Co., 890 F.Supp. 1324 (S.D.Tex. 1995).

The July 11, 1995 order is 41 pages long.  The first six pages lay out the procedural history in the cases consolidated before the Texas district court.  890 F.Supp. at 1335-41.  The next 10 pages explain the Texas district court's reasoning for asserting federal jurisdiction over the case due to the presence of the impleaded Israeli companies, pursuant to the FSIA.  890 F.Supp. at 1341-51.  Then, the Texas district court delved into its lengthier (23-page) f.n.c. analysis, including a survey of the availability of legal remedies in each of the plaintiffs' home countries, culminating in a dismissal of the consolidated

cases for f.n.c. 890 F.Supp. at 1351-75. Recognizing the difficulty litigating these cases in the plaintiffs' home countries, the Texas district court allowed the parties another 90 days within which to expedite discovery in the U.S., as follows:

> The court concludes that the overwhelming majority of the relevant sources of proof are more readily available to the parties in the home countries of the plaintiffs and that this factor weighs heavily in favor of dismissal. Nevertheless, because foreign fora might not afford plaintiffs as many opportunities for discovery as they desire, to ensure that plaintiffs have access to evidence located in the United States no case will be dismissed until 90 days have elapsed after the entry of this Memorandum and Order. During that time plaintiffs may pursue expedited discovery against defendants under the supervision of this court.

890 F.Supp. at 1367. The last paragraph in the Texas district court's July 11, 1995 order read as follows:

> Other motions
> In addition to defendant's motion to dismiss for f.n.c., a number of other motions are pending. Because Delgado, Jorge Carcamo, Valdez, and Isae Carcamo may be dismissed in 90 days, all pending motions in those cases not otherwise expressly addressed in this memorandum and Order are **DENIED** as **MOOT**.

Id. (emphasis in original).

The July 11, 1995 order also contained, pursuant to Fifth Circuit precedent, a return jurisdiction provision, which read

> Notwithstanding the dismissals that may result from this Memorandum and Order, in the event that the highest court of any foreign country finally affirms the dismissal for lack of jurisdiction of any action commenced by a plaintiff in these actions in his home country or the country in which he was injured, that plaintiff may return to this court and, upon proper motion, the court will resume jurisdiction over the action as if the case had never been dismissed for f.n.c.

890 F.Supp. at 1375.

On October 27, 1995, the Texas district court entered a final judgment dismissing the Carcamo/Delgado consolidated action based on the f.n.c. dismissal.  Chaverri, 896 F.Supp.2d at 562.

The Carcamo/Delgado plaintiffs appealed the judgment, but the United States Court of Appeals for the Fifth Circuit affirmed the dismissal on October 19, 2000.  See Delgado, 231 F.3d at 182.  The United States Supreme Court denied certiorari on April 16, 2001.  See Delgado v. Shell Oil Co., 532 U.S. 972 (2001).

Meanwhile, while the appeal of the Texas district court's judgment was pending, the war moved to our shores.

### 4.   The War Moves to Hawai'i

The instant case was filed on October 3, 1997.  As had happened in Carcamo/Delgado, Dole impleaded the defendant Israeli companies, and the case was removed to the United States District Court for the District of Hawai'i pursuant to the FSIA.  Dole Food Co. v. Patrickson, 538 U.S. 468, 472 (2003).  As the Texas district court had done, the Hawai'i district court dismissed the case for f.n.c.  Patrickson, 251 F.3d at 798.  On appeal, however, unlike the Fifth Circuit, the Ninth Circuit reversed, holding that the Israeli companies were not organs of the Israeli government, and therefore, did not qualify as instrumentalities of a foreign state under the FSIA.  251 F.3d at 808.  Therefore, the Ninth Circuit held that the federal

8

courts did not have jurisdiction over the case, and ordered the Hawaiʻi district court to remand the case to Hawaiʻi state court. 251 F.3d at 808-09.  The United States Supreme Court accepted certiorari to resolve the split between the Fifth and Ninth Circuits, and affirmed the Ninth Circuit.  Dole Food Co., 538 U.S. 468.  The instant case was remanded to Hawaiʻi state court, specifically the Second Circuit Court, and venue was later changed to the First Circuit Court.

### 5.   Texas Epilogue

The Delgado/Carcamo class action eventually returned to Texas, pursuant to the return jurisdiction clause in the Texas district court's July 11, 1995 order, after the Costa Rican courts dismissed the Costa Rican plaintiffs' claims for lack of jurisdiction.  Chaverri, 896 F.Supp.2d at 561; Marquiniz, 2014 WL 2197621 at \*2.  The cases were reinstated in Texas state court.  Chaverri, 896 F.Supp.2d at 562.  In September 2007, a Texas state court dismissed the Delgado action after defendants settled with the named plaintiffs.  Id.  In June 2010, a Texas state court denied a motion to certify the class in the Carcamo action.  Id.  Thus, by 2010, the DBCP litigation war had ended; the remaining DBCP battles occurring on other fronts (e.g., in Hawaiʻi, the Eastern District of Louisiana, and Delaware, according to our record on appeal) continued only to the extent

that the Texas action tolled the statute of limitations in those jurisdictions.

**B.   An In-Depth Look at the Instant Hawaiʻi DBCP Class Action**

**1.   Complaint and First Amended Complaint**

In this case, Gerardo Dennis Patrickson, Rodolfo Bermudez Arias, Benigno Torres Hernandez, Fernando Jimenez Arias, Melgar Olimpio Moreno, Leandro Santos, Herman Romero Aguilar, Elias Espinoza Merelo, Celestino Hooker Era, Alirio Manuel Mendez, and Carlos Humberto Rivera,[2] individually and on behalf of others similarly situated ("Plaintiffs"), filed their Complaint (and First Amended Complaint) against Dole Food Company, Inc.; Dole Fresh Fruit Company; Dole Fresh Fruit International, Limited; Dole Fresh Fruit International, Inc.; Pineapple Growers Association of Hawaii; Amvac Chemical Corporation; Shell Oil Company; Dow Chemical Company; Occidental Chemical Corporation; Standard Fruit Company; Standard Fruit and Steamship Company; Standard Fruit Company de Costa Rica, S.A.; Standard Fruit Company de Honduras, S.A.; Chiquita Brands, Inc.; Chiquita Brands International, Inc.; Maritrop Trading Corporation; Del

_____

[2]   On certiorari, only six named Plaintiffs remain in this action (Gerardo Dennis Patrickson, Benigno Torres Hernandez, Fernando Jimenez Arias, Elias Espinoza Merelo, Alirio Manual Mendez, and Carlos Humberto Rivera).  Alirio Manual Mendez and Carlos Humberto Rivera stipulated to partially dismiss, without prejudice, all claims against Defendants Dole Food Company, Inc.; Dole Fresh Fruit Company; Standard Fruit Company; and Standard Fruit and Steamship Company.  Roldolfo Bermudez Arias, Celestino Hooker Era, Herman Romero Aguilar, Leandro Santos, and Melgar Olimpio Moreno all stipulated to partially dismiss, without prejudice, all claims against all defendants.

Monte Fresh Produce, N.A.; Del Monte Fresh Produce Company; and Doe Defendants.[3]

The Complaint alleged that the Plaintiffs were banana plantation workers from Costa Rica, Ecuador, Guatemala, and Panama, who were exposed to DBCP, made by or used by the Defendants, and such exposure caused severe injuries to the Plaintiffs' reproductive systems.  The Plaintiffs alleged as causes of action the following:  negligence, conspiracy, strict liability, intentional tort, and breach of implied warranty. They prayed for compensatory and punitive damages.

The circuit court denied the Plaintiffs' motion for class certification and appointment of class representative on June 13, 2008.  Plaintiffs did not appeal the denial of class certification.  Therefore, this case concerns only the named Plaintiffs.

### 2.  Dow's Motion for Partial Summary Judgment

On April 13, 2009, Dow filed a motion for partial summary judgment against Gerardo Dennis Patrickson, Benigno Torres Hernandez, Fernando Jimenez Arias, Elias Espinoza Merelo, Alirio

---

[3]     The parties later stipulated to dismiss, without prejudice, Chiquita Brands, Inc.; Chiquita Brands International, Inc.; Maritrop Trading Corporation; Dole Fresh Fruit International, Inc.; Dole Fresh Fruit International, Ltd.; Standard Fruit Company de Costa Rica, S.A.; Standard Fruit de Honduras, S.A.; Del Monte Fresh Produce Company, and Fresh Del Monte Produce N.V. (incorrectly named as Del Monte Fresh Produce and Fresh Del Monte N.V.).

Manuel Mendez, and Carlos Humberto Rivera.  Dow argued that on June 9, 1995 (over two years before the filing of the instant complaint on October 3, 1997), these six named plaintiffs filed the Abarca action, which made the same allegations as those in the instant case.  To Dow, the Abarca action proved that these plaintiffs knew of their claims by June 9, 1995, and their causes of action accrued by that date.  Therefore, because the Plaintiffs did not file the instant complaint within two years of having filed the Abarca complaint, their claims were barred by the two-year statute of limitations found under HRS § 657-7 (1993)[4] for tort actions.

### 3.    Plaintiffs' Opposition to Dow's Motion for Partial Summary Judgment

The Plaintiffs filed a memorandum in opposition to Dow's motion for partial summary judgment.  They counter-argued that the Abarca action was a "purely defensive response to defendants' efforts to enjoin the litigation of any additional DBCP cases by the Texas [district] court hearing the [Carcamo/]Delgado litigation."  With regard to the statute of limitations, the Plaintiffs asserted that the "continued pendency of the 1993 Carcamo putative class action (consolidated

---

[4]    HRS § 657-7 (1993) is entitled "Damage to persons or property" and provides, "Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after, except as provided in section 657-13."  HRS § 657-13 (1993), in turn, contains exceptions for infancy, insanity, and imprisonment, which are not at issue in this case.

into 'Delgado') suspended the running of the statute of limitations," under American Pipe & Constr. Co. v. Utah, 414, U.S. 538, 554 (1974), which held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."  The Plaintiffs also noted that the United States Supreme Court extended American Pipe's holding in Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 350 (1983), to allow tolling not only in cases where plaintiffs sought to intervene in a continuing action, but also where they sought to file an entirely new action.  The Plaintiffs noted that this court adopted American Pipe and Crown, Cork in Levi, 67 Haw. 90, 679 P.2d 129.  The Plaintiffs asserted that the Levi court made clear that "tolling provisions [extend] to all asserted members of the class, until class certification is denied."  67 Haw. at 94, 679 P.2d at 132.

Applying American Pipe, Crown, Cork, and Levi to the instant facts, the Plaintiffs argued that their Complaint was timely because the Hawaiʻi statute of limitations was tolled by the 1993 filing of the Texas class actions.  The Plaintiffs acknowledged that the Texas district court entered a f.n.c. dismissal order on July 11, 1995, but they argued that the Carcamo/Delgado putative class action was ultimately reinstated in Texas state court "as though it had never been dismissed" and

"remained pending until it was finally dismissed in September 2007." Therefore, Plaintiffs argued, their 1997 Complaint was timely.

### 4. Dow's Reply

Dow's reply preliminarily pointed out that its motion for partial summary judgment had become, in effect, a motion for summary judgment, because the four other plaintiffs who were not the subject of the partial motion for summary judgment were in the process of dismissing their claims against the defendants. As to whether the Carcamo/Delgado class action tolled the statute of limitations on the Plaintiffs' complaint, Dow argued that American Pipe, Crown, Cork, and Levi do not support the Plaintiffs' argument that a class action pending in one jurisdiction tolled the statute of limitations in another jurisdiction. Dow argued that those cases involved subsequent claims brought by members of a putative class in the same jurisdiction. Dow argued that a majority of jurisdictions do not allow cross-jurisdictional tolling.

Moreover, even assuming cross-jurisdictional tolling applied, Dow pointed out that any such tolling ended when class certification in Carcamo/Delgado was denied by the Texas district court's July 11, 1995 order. That order denied "all pending motions in [the consolidated cases] not otherwise expressly addressed in this Memorandum and Order" as moot.

14

Delgado, 890 F.Supp. at 1375.  Dow attached the state court docket sheet for Carcamo as an exhibit to its reply to show that plaintiffs' motion for class certification was pending when the Texas district court issued its July 11, 1995 order.  The parties stipulated that the six named Plaintiffs in the instant case were putative class members in the Carcamo case.

Lastly, Dow argued that Plaintiffs cannot rely on class action tolling after having filed the Abarca action while a motion for class certification in Carcamo/Delgado was still pending.  The parties stipulated that the six named Plaintiffs were named parties in Abarca.

### 5.    Hearing on the Motion for Partial Summary Judgment

At the hearing on Dow's Motion for Partial Summary Judgment, the parties focused on whether the July 11, 1995 order denied class certification in the Carcamo/Delgado case clearly enough to restart the Hawai'i statute of limitations. Plaintiffs' counsel argued that the July 11, 1995 order did not dispose of the Carcamo motion to certify a class action, because "that housekeeping order didn't reference class certification specifically," and "it wasn't clear that [there] was a pending motion [for class certification].  It hadn't been set for hearing.  It hadn't been briefed.  It wasn't argued."  Dow's counsel, on the other hand, argued that the July 11, 1995 order was "the original denial of the motion [to certify the class]

15

and the original dismissal of the [Carcamo/Delgado] action";
therefore, the July 11, 1995 date set the limitations clock
ticking once again.

It became clear, however, that the circuit court intended
to grant the partial motion for summary judgment in Defendants'
favor because it considered the filing of the Abarca case to be
an effective "opt-out" of the Carcamo/Delgado class action.

### 6. Order Granting Dow's Motion for Partial Summary Judgment; Final Judgment; Notice of Appeal

The circuit court granted Dow's motion for partial summary
judgment in an order dated July 30, 2009, as well as co-
defendants' joinders in that motion.  The circuit court filed
its judgment on July 26, 2010, and the Plaintiffs timely
appealed.

### 7. The ICA Appeal

#### a. Opening Brief

On appeal, Plaintiffs focused on the significance of the
Abarca filing, as that formed the basis of the circuit court's
order granting Dow's motion for partial summary judgment on
limitations grounds.  The Plaintiffs argued that the filing of
the Abarca complaint, which was never served and later
voluntarily dismissed, did not commence an action for statute of
limitations purposes, and did not manifest an intent to opt-out
of the Carcamo/Delgado class action.  Plaintiffs argued that,

16

because the putative class action in <u>Delgado</u> was not finally dismissed until September 2007, and because class certification was not denied in <u>Carcamo</u> until June 2010, Plaintiffs had two years from those dates from which to file a timely action; therefore, the Plaintiffs' October 1997 Complaint was timely filed.  The Plaintiffs argued that the defendants' approach would frustrate the purposes of the class action tolling doctrine by forcing plaintiffs to prematurely commence individual actions out of an abundance of caution rather than relying on class actions to protect their interests.  The Plaintiffs requested that the ICA reverse the circuit court's judgment and order granting summary judgment in favor of the Defendants.

### b.  Answering Brief

Only Dow filed a substantive Answering Brief, while other defendants filed joinders to it.  Dow first argued that the Texas district court's July 11, 1995 order in <u>Carcamo/Delgado</u> denied a pending class certification motion as moot; therefore, the Hawai'i two-year statute of limitations began running on that date, and Plaintiffs' October 3, 1997 Complaint was time-barred. Second, Dow argued that the ICA should not recognize cross-jurisdictional tolling.  Third, Dow argued that the Plaintiffs opted out of the <u>Carcamo/Delgado</u> class action by filing individual claims in the <u>Abarca</u> complaint.  Moreover, the filing

of the Abarca action in June 1995 demonstrated that the Plaintiffs were aware of their claims at that time, over two years before they filed the instant complaint, and thus, beyond the Hawaiʻi two-year statute of limitations governing their claims. Dow requested that the ICA affirm the circuit court's judgment.

### c. Reply Brief

In their Reply, the Plaintiffs argued that the July 11, 1995 order was a "routine housekeeping order" incidental to the district court's f.n.c. dismissal, which "did not specifically refer to the [Carcamo/]Delgado plaintiffs' motion for class certification" when it ruled that "all pending motions" were moot. The Plaintiffs also argued that the ICA could recognize cross-jurisdictional tolling, as this court's Levi opinion left open that possibility.

### d. The ICA's Memorandum Opinion

The ICA affirmed the circuit court's Judgment. Patrickson v. Dole Food Co., No. 30700 (App. Mar. 7, 2014) (mem.) at 21. The ICA concluded

> [A]ll claims asserted by the Six Plaintiffs that have a
> two-year statute of limitations are time barred. The
> Abarca action establishes that the Six Plaintiffs were
> aware of their claims at least by June 9, 1995, when the
> Abarca complaint was filed. Moreover, even if we assume
> that class action tolling applied, such tolling ended on
> July 11, 1995, when [the Texas district court's order] was
> issued, and the complaint in this case was filed more than
> two years later, on October 3, 1997.

18

Id. at 15.

## III.  Standard of Review

This court reviews a circuit court's grant of summary judgment de novo.  See Hawai'i Cmty. Fed. Credit Union v. Keka, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000).  "[S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Id. (citations omitted).

## IV.  Discussion

### A.  Plaintiffs' Application

On certiorari, the Plaintiffs present the following questions:

> A.  Whether an order entered on July 11, 1995 – purportedly dismissing the prior class action – that explicitly did not take effect until October 11, 1995 operates to bar Petitioners' October 3, 1997 lawsuit on limitations grounds.
> B.  Whether an administrative "housekeeping" order included in a forum non conveniens order denying "all pending motions" as "moot" – without specifying those pending motions – put putative class members on notice that class action tolling had ended.

The Plaintiffs first argue that the July 11, 1995 order "expressly stated that the Order would not take affect [sic] until 90 days after the date of the Order because it was conditional upon the defendants submitting to certain stipulations to make the Order effective.  890 F.Supp. 1373,

19

1375.  As a result, the Order did not become effective until October 11, 1995."  The Plaintiffs argue that the Texas district court's paragraph denying all other pending motions as moot also took effect on October 11, 1995.  Therefore, the Plaintiffs argue, they timely filed their Complaint on October 3, 1997, which was within two years of October 11, 1995.

Next, the Plaintiffs argue that the July 11, 1995 order's paragraph denying all other pending motions as moot was a "generic housekeeping order," that "did not even refer to a class certification motion," and "did not contain any discussion of the requirements of class certification under federal Rule 23."  The Plaintiffs argue that the provision therefore "did not [sic], and could not have put, putative class members reasonably on notice of the need to act."  They argue that this court should "clarify the law to require that the termination of class action tolling must be sufficiently clear and unambiguous to put putative members of the class on notice that limitations has begun to run against their claims and they have an obligation to act."

## B. Dow's and Dole's Responses

Dow and Dole filed Responses.[5] As to Plaintiffs' argument that the July 11, 1995 order did not take effect until October 11, 1995, Dow counter-argues that the conditional f.n.c. dismissal "is in no way relevant to the denial of the class action certification motion"; the 90-day expedited discovery deadline ending on October 11, 1995 had nothing to do with the dismissal of the Carcamo motion for class certification, which was pending at the time the Texas district court denied "all other pending motions" as moot. More emphatically, Dole argues, "A motion denied is a motion denied. Contrary to Petitioner's assertions, there was nothing 'vague' or 'ambiguous' about the July 1995 Order." Thus, the Defendants argue that any class action tolling stopped on July 11, 1995, when class certification was denied, and the Plaintiffs had two years from that date to file their Complaint.

Dow and Dole also point out that the ICA's holding is consistent with those of two recent cases examining the effect of the July 11, 1995 order on putative DBCP class actions filed within their respective jurisdictions, Marquiniz and Chaverri, which both concluded that the July 11, 1995 denial of the

---

[5]     Respondents Pineapple Growers Association of Hawaii; Occidental Chemical Corporation, and Shell Oil Company joined in Dow's Response. Respondent Pineapple Growers Association of Hawaii joined in Dole's Response.

pending motion for class certification restarted limitations periods. See Marquiniz, 2014 WL 2197621 at *2, and Chaverri, 896 F.Supp.2d at 569. Dow notes both cases hold that the denial of class certification, while not on the merits, was sufficient to end any class action tolling. See Marquiniz, 2014 WL 2197621 at *2 ("While the denial of the motion was not on the merits, any reliance would have been objectively unreasonable, as the case was dismissed."); Chaverri, 896 F.Supp.2d at 569 (noting that courts "did not make any distinction based upon the type or manner of denial, nor did they require that the denial be on the merits."). Dow states that these holdings are in line with the majority rule that "the tolling rule announced in [American Pipe] extends only through the denial of class status in the first instance by the district court." Giovanniello v. ALM Media, 726 F.3d 106, 116 (2d Cir. 2013). Dole agrees, arguing that "federal courts are in broad agreement 'that [class action] tolling ceases upon entry of an order denying class certification in the trial court.'" See Arivella v. Lucent Techs., Inc., 623 F.Supp.2d 164, 174-75 (D.Mass. 2009).

**C. Analysis**

**1. Cross-Jurisdictional Tolling**

A threshold issue in this appeal is whether the pendency of the Texas Carcamo/Delgado action tolled this state's statute of limitations. In other words, this court must decide whether to

recognize "cross-jurisdictional tolling."  "Cross-jurisdictional tolling" has been defined as "a rule whereby a court in one jurisdiction tolls the applicable statute of limitations based on the filing of a class action in another jurisdiction."  Quinn v. Louisiana Citizens Prop. Ins. Co., 118 So.3d 1011, 1018 n.7 (La. 2012) (citations omitted).

We start with the general premise that the pendency of a class action will toll the statute of limitations for intervenors and those pursuing individual suits within the federal court system, and within the Hawai'i state court system. American Pipe, 414 U.S. at 554; Crown, Cork, 462 U.S. at 354; Levi, 67 Haw. at 93, 679 P.2d at 132.  This "class action tolling" rule originated in American Pipe, which held that the "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."  American Pipe, 414 U.S. at 554. In other words, the pendency of a class action will toll the applicable statute of limitations for would-be intervenors. Further, "[o]nce the statute of limitations has been tolled, it remains tolled for all members of the putative class until class certification is denied.  At that point, class members may choose to file their own suits or to intervene as plaintiffs in the pending action."  Crown, Cork, 462 U.S. at 354.  In other

words, the American Pipe rule applies not only to intervenors to a class action, but also to putative class action plaintiffs seeking to file individual suits upon the denial of class certification. This court in Levi adopted the American Pipe and Crown, Cork "class action tolling" rule to Hawaiʻi state court actions. 67 Haw. at 93, 679 P.2d at 132. Whether class action tolling applies cross-jurisdictionally so that a putative class action filed in one jurisdiction operates to suspend this state statute of limitations is a matter of first impression for this court.[6]

We note that other states are split on the issue of whether a putative class action filed in one jurisdiction will operate to toll the statute of limitations in another. Cases in which courts have recognized such cross-jurisdictional tolling include Stevens v. Novartis Pharmaceuticals Corp., 247 P.3d 244 (Mont. 2010); Vaccariello v. Smith & Nephew Richards, 763 N.E.2d 160 (Ohio, 2002); Staub v. Eastman Kodak Co., 726 A.2d 955

---

[6] We note that, almost 30 years ago, the United States Court of Appeals for the Second Circuit had the opportunity to examine whether cross-jurisdictional tolling existed in Hawaiʻi. See In re Agent Orange Product Liability Litigation, 818 F.2d 210 (2d Cir. 1987). The Hawaiʻi plaintiffs-appellants in that case argued that the pendency of a multi-district federal class action in the Eastern District of New York tolled the two-year Hawaiʻi statute of limitations such that their claims were timely filed. 818 F.2d at 213. The Second Circuit disagreed, holding that "none of [Hawaii's limitations statutes] provides for tolling in a situation such as exists here . . . [so that] it is doubtful that either American Pipe or Crown, Cork can be treated as applicable precedent." Id. (citations omitted). In other words, the Second Circuit declined to interpret Hawaiʻi law to cross-jurisdictionally toll the state statute of limitations during the pendency of a federal class action.

(N.J.Sup.Ct.App.Div. 1999); Hyatt Corp. v. Occidental Fire & Cas. Co. of N.C., 801 S.W.2d 382 (Mo. Ct. App. 1990); and Lee v. Grand Rapids Bd. of Educ., 384 N.W.2d 165 (Mich. Ct. App. 1986). Cases in which courts have declined to adopt cross-jurisdictional tolling include Casey v. Merck & Co., 722 S.E.2d 842 (Va. 2012); Ravitch v. Pricewaterhouse, 793 A.2d 939 (Pa. Super. Ct. 2002); Maestas v. Sofamor Danek Group, Inc., 33 S.W.3d 805 (Tenn. 2000); Portwood v. Ford Motor Co., 701 N.E.2d 1102 (Ill. 1998); and Bell v. Showa Denko K.K., 899 S.W.2d 749 (Tex. Ct. App. 1995).

Those states declining to adopt cross-jurisdictional tolling do so out of concern for forum shopping and delay. See Portwood, 701 N.E.2d at 1104; Maestas, 33 S.W.3d at 808. On forum-shopping, the Portwood court reasoned that cross-jurisdictional tolling "may actually increase the burden on [a] state's court system, because plaintiffs from across the country may elect to file a subsequent suit in that state solely to take advantage of the generous tolling rule." 701 N.E.2d at 1104; see also Ravitch, 793 A.2d at 944 (citing Portwood, 701 N.E.2d at 1104). On delay, the Portwood court noted that a forum state's court has no control over the work of another jurisdiction's courts, and that lengthening a forum state's statute of limitations during the pendency of an out-of-jurisdiction class action could require forum states to

ultimately entertain stale claims.  701 N.E.2d at 1104.  The Maestas court also viewed cross-jurisdictional tolling as a threat to the forum state's "power to adopt statutes of limitations and exceptions to those statutes. . . ."  33 S.W.3d at 809.  Where a forum state's statute is cross-jurisdictionally tolled by a pending federal class action in particular, the Maestas court additionally held that such tolling "would arguably offend the doctrines of federalism and dual sovereignty."  Id.

Those states adopting cross-jurisdictional tolling do so to promote the "efficient utilization of judicial resources and the reduction of costs to individual litigants," which "are among the principal purposes of both state and federal class action rules."  Staub, 726 A.2d at 966; Stevens, 247 P.3d at 256.  The Supreme Court of Ohio adopted cross-jurisdictional tolling because it was "more important to ensure efficiency and economy of litigation than to rigidly adhere" to its state statutes of limitations.  Vaccariello, 763 N.E.2d at 163.  That court acknowledged that the purposes of statutes of limitations are to "put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights."  763 N.E.2d at 162.  The court stated, however, that even the United States Supreme Court in Crown, Cork observed that "blind application of statutes of limitations would frustrate '[t]he principal

26

purposes of the class-action procedure -- promotion of efficiency and economy of litigation.'" Id. (citing 462 U.S. at 349).  Therefore, the Vaccariello court stated that "allowing the filing of a class action in the [other jurisdiction] to toll the statute of limitations in [a subsequent state action] does not defeat the purpose" of the state statute of limitations, because the first class action put the defendant "on notice of the substance and nature of the claims against it" within the limitations period.[7]  Id.  Further, noting that the bulk of its state class action rules is identical to the bulk of the [out-of-jurisdiction] class action rules, the Vaccariello court held that "a class action filed in [the other jurisdiction] serves the same purpose as a class action filed in Ohio."  Id.

The Vaccariello court also did not consider the flood of lawsuits feared by the Portwood court to be "a realistic

---

[7]     Of course cross-jurisdictionally tolling a state statute of limitations as to a defendant named in the state action but not named in the first class action would be unfair.  Therefore, we agree with the ICA's footnote 9, which states:

> Because notice to the defendant of the claim is one of the underlying rationales supporting class action tolling, such tolling does not apply to claims against a Defendant who was not previously named as a defendant in Carcamo.  From the record, it appears that Defendants Pineapple Growers Association of Hawaii, AMVAC Chemical Corporation, Del Monte Fresh Produce N.A., Inc., and Del Monte Fresh Produce (Hawaii) Inc. were not named as defendants in Carcamo, and thus for this additional reason any tolling does not apply to claims against these Defendants.

Patrickson, mem. op. at 13 n.9.  See also Bell, 899 S.W.2d at 758 (declining to adopt cross-jurisdictional tolling in any event, but observing that such tolling would not apply to defendants who were not named as defendants in the first class action).

27

potential problem." Vaccariello, 763 N.E.2d at 163. Rather, the Vaccariello court held that cross-jurisdictional tolling "merely allows a plaintiff who could have filed suit in [the forum state] irrespective of the class action filed in [another jurisdiction] to rely on that class action to protect her rights in [the forum state]." Id. To do otherwise, that court held, "would encourage all potential plaintiffs in [the forum state] who might be a part of a class that is seeking certification in [an out-of-jurisdiction] class action to file suit individually in [the forum state's] courts to preserve their [forum state] claims should the class certification be denied." Id. The resulting "multiplicity of filings would defeat the purpose of class actions. . . ." Id. The Superior Court of New Jersey's Appellate Division also considered the unfairness of disallowing cross-jurisdictional tolling when it held that "a contrary rule would reward defendants who caused a court to delay decision of class action certification until the statute of limitations had run. . . ." Staub, 726 A.2d at 966.

We find the reasoning of those states adopting cross-jurisdictional tolling to be more persuasive, as well as consistent with our existing precedent, namely Levi. In Levi, we adopted the American Pipe and Crown, Cork class action tolling rule and noted the following:

> One of the purposes of a class action suit is to prevent multiplicity of actions, thereby preserving the economies of time, effort and expense.  This objective can be effectively achieved only by allowing the proposed members of a class to rely on the existence of a suit which protects their rights.

67 Haw. at 93, 679 P.2d at 132.  We therefore hold that a class action filed in another jurisdiction will toll the applicable Hawai'i statute(s) of limitations.

### 2.    The End of the Cross-Jurisdictional Tolling Period

The next question we confront is, when did the cross-jurisdictional tolling of our state statute of limitations end?  We are cognizant of the authority marshalled by the Defendants that a majority of the federal courts hold that "the tolling rule announced in [American Pipe] extends only through the denial of class status in the first instance by the district court."  Giovanniello, 726 F.3d at 107-08; see also Arivella, 623 F.Supp.2d at 174-75 ("Most courts . . . also agree that [class action] tolling ceases upon entry of an order denying class certification in the trial court."  Citing this authority, the Defendants argue that any tolling ended upon the Texas district court's July 11, 1995 order dismissing the Carcamo/Delgado case for f.n.c. and all other pending motions as moot.  Therefore, argue the Defendants, Plaintiffs' October 3, 1997 Complaint was untimely, having been filed beyond the two-year statute of limitations in HRS § 657-7.

29

Plaintiffs, on the other hand, focus on the language of the July 11, 1995 order. They argue that the order's paragraph denying all other pending motions as moot was a "generic housekeeping order," that "did not even refer to a class certification motion," and "did not contain any discussion of the requirements of class certification under federal Rule 23." The Plaintiffs also argue that any tolling ended at the earliest on October 10, 1995[8], 90 days after the entry of the July 11, 1995 order, because the order did not take effect immediately; instead, the order stated, "[N]o case will be dismissed until 90 days have elapsed after the entry of this Memorandum and Order." 890 F.Supp. at 1367. Therefore, argue the Plaintiffs, their October 3, 1995 Complaint was timely, having been filed days before the two year statute of limitations in HRS § 657-7 ended. They urge this court to "clarify the law to require that the termination of class action tolling must be sufficiently clear and unambiguous to put putative members of the class on notice that limitations has begun to run against their claims and they have an obligation to act."

The Plaintiffs' arguments are persuasive. While it is not true that the July 11, 1995 order "did not even refer to a class

---

[8]     The Plaintiffs calculate the 90th day to be October 11, 1995, but it appears that the 90th day was October 10, 1995.

certification motion,"[9] it is true that it "did not contain any discussion of the requirements of class certification under federal Rule 23."  The denial of class certification in the July 11, 1995 order was, as Plaintiffs argue, not express.  Therefore, we agree with the Plaintiffs that the July 11, 1995 order did not terminate class action tolling in a "sufficiently clear and unambiguous" way in order to "put putative members of the class on notice that" the Hawaiʻi state statute of limitations had begun to run against them.

Moreover, it would appear from the plain language of the order that July 11, 1995 was not the date that the order itself would take effect in any event.  In the order, the Texas district court stated that its dismissal of the cases would not take effect for another 90 days:

> The court concludes that the overwhelming majority of the relevant sources of proof are more readily available to the parties in the home countries of the plaintiffs and that this factor weighs heavily in favor of dismissal. Nevertheless, because foreign fora might not afford plaintiffs as many opportunities for discovery as they desire, to ensure that plaintiffs have access to evidence located in the United States <u>no case will be dismissed until 90 days have elapsed after the entry of this Memorandum and Order</u>. During that time plaintiffs may pursue expedited discovery against defendants under the supervision of this court.

890 F.Supp. at 1367 (emphasis added).  Further, the district court's affirmative statement that "no case will be dismissed

---

[9]    The record reflects that there was a pending class certification motion in Carcamo, and the Texas district court was aware of it when it stated in the July 11, 1995 order, "Defendants respond that while plaintiffs have sought class certification in several of the pending actions, no classes have been certified."  Delgado, 890 F.Supp. at 1368.

until 90 days have elapsed after the entry of this Memorandum

and Order" is in tension with the more tentative "may be

dismissed" language of the provision dismissing all pending

motions as moot:

> Other motions
>         In addition to defendant's motion to dismiss for
> f.n.c., a number of other motions are pending.  Because
> <u>Delgado</u>, <u>Jorge Carcamo</u>, <u>Valdez</u>, and <u>Isae Carcamo</u> <u>may be</u>
> <u>dismissed in 90 days</u>, all pending motions in those cases
> not otherwise expressly addressed in this Memorandum and
> Order are **DENIED** as **MOOT.**

890 F.Supp. at 1375. (capitalization in original; emphasis

added).  It would appear from the plain language of the July 11,

1995 order that, as of that date, there still remained a

possibility that the <u>Carcamo</u>/<u>Delgado</u> litigation might not be

dismissed; therefore, a related motion for class certification

might not become moot.  Thus, as Plaintiffs argue, the July 11,

1995 order did not unambiguously signal to putative class

members of the need to act to protect their interests.  It was

not until October 27, 1995 that the Texas district court filed

its judgment dismissing the <u>Carcamo</u>/<u>Delgado</u> cases that it could

be said with certainty that class certification was denied.

In order to prevent such confusion from arising in the

future, we hold that the pendency of a class action in another

jurisdiction operates to toll our state's applicable statute(s)

of limitations until the court in our sister jurisdiction issues

an order expressly denying a motion for class certification (or

expressly denying the last such motion, if there is more than one motion). The July 11, 1995 order in this case was not an express denial of class certification; therefore, July 11, 1995 is not the date our state statute of limitations began to run again. Barring such an express order in this case, we hold that the Texas district court's October 27, 1995 final judgment dismissing Carcamo/Delgado for f.n.c. clearly denied class certification and triggered the resumption of our state statute of limitations. The Plaintiffs' Complaint, which was filed on October 3, 1997, was therefore timely.

Finally, although the parties no longer pursue the issue of whether the Abarca filing constituted an "opt-out" of the Carcamo/Delgado class action, we note that cross-jurisdictional tolling would also end upon a class member's decision to opt-out of a class action suit. In the present case, however, the Abarca filing was not an opt-out of the Carcamo/Delgado class action under the Hawai'i Rules of Civil Procedure ("HRCP") or the Federal Rules of Civil Procedure ("FRCP"). Under both HRCP Rule 23(c)(2) (2011) and FRCP Rule 23(c)(2) (2009), once a court determines that a class action can be maintained under subsection (b)(3), then the court notifies class members that they can opt out of the class by sending a request to the court. See HRCP Rule 23(c)(2) ("In any class action maintained under subdivision (b)(3), the court shall direct to the members of the

class the best notice practicable under the circumstances . . . advis[ing] each member that . . . the court will exclude the member from the class if the member so requests by a specified date. . . ."); FRCP Rule 23(c)(2) ("For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances . . . clearly and concisely stat[ing] in plain, easily understood language . . . that the court will exclude from the class any member who requests exclusion. . . .")

In this case, the Texas district court had not certified the Carcamo/Delgado class action; therefore, the opt-out provisions of HRCP Rule 23(c)(2) and FRCP Rule 23(c)(2) were not triggered. The Abarca filing was not an opt-out as envisioned under those rules.

## V. Conclusion

We hold that Hawaiʻi recognizes cross-jurisdictional tolling. Cross-jurisdictional tolling ends when a court in our sister jurisdiction issues an order expressly denying a motion for class certification (or expressly denying the last such motion, if there is more than one motion). Where there is no such express order, cross-jurisdictional tolling ends when a court in our sister jurisdiction enters final judgment dismissing the class action. We note that cross-jurisdictional tolling also ends when a class member opts out of the class

34

pursuant to the class action rules of this state or a sister jurisdiction.

In this case, the Plaintiffs' June 1995 Abarca filing was not an opt-out of the Carcamo/Delgado class action under FRCP Rule 23(c)(2); therefore, it did not trigger the resumption of our state's statute of limitations.  The Texas district court's July 11, 1995 order did not expressly deny the Carcamo motion for class certification; therefore, the July 11, 1995 date did not mark the resumption of our state's statute of limitations. The Texas district court did clearly dismiss the Carcamo/Delgado class action by final judgment entered on October 27, 1995, thus restarting our state's two-year limitations period. Consequently, Plaintiffs were required to file their Complaint by October 27, 1997.  The Plaintiffs filed their Complaint on October 3, 1997; therefore, the Complaint was timely.  As the ICA held otherwise, its judgment is hereby vacated, as is the final judgment of the circuit court, and this case is remanded

to the circuit court for further proceedings consistent with

this opinion.

Sean M. Lyons                          /s/ Mark E. Recktenwald
for petitioners
                                       /s/ Paula A. Nakayama
Sidney K. Ayabe,
Calvin E. Young,                       /s/ Sabrina S. McKenna
Steven L. Goto, and
Michael L. Brem                        /s/ Richard W. Pollack
(admitted pro hac vice)
for respondent                         /s/ Michael D. Wilson
The Dow Chemical Company



Melvyn M. Miyagi,
Ross T. Shinyama,
Angela T. Thompson, and
Andrea E. Neuman
(admitted pro hac vice)
for respondent
Dole Food Company, Inc.

Melvyn M. Miyagi,
Ross T. Shinyama, and
Angela T. Thompson
for respondent
Pineapple Growers
Association of Hawaii

Judy A. Tanaka and
Maile Osika
for respondent
Occidental Chemical Corporation

Wendell H. Fuji and
Anthony F. Suetsugu
for respondent
Shell Oil Company