■ MARDEN D. PARU, on Behalf of Himself and All Others Similarly Situated, Respondent-Appellant, v MUTUAL OF AMERICA LIFE INSURANCE COMPANY, Appellant-Respondent. [863 NYS2d 151]—

Judgment, Supreme Court, New York County (Bernard J. Fried, J.), entered November 16, 2007, dismissing the second amended complaint and bringing up for review an order, same court and Justice, entered November 1, 2007, which granted defendant's motion to dismiss the second amended complaint pursuant to CPLR 3211 (a) (7), unanimously affirmed, without costs. Appeal from above order unanimously dismissed, without costs, as subsumed in the appeal from the judgment. Appeal from order, same court and Justice, entered March 22, 2007, which, inter alia, granted plaintiff's cross motion for leave to file a second amended complaint, unanimously dismissed, without costs.

Plaintiff, an investor in a variable annuity contract (VAC) issued by defendant, claims he suffered damages when other investors in the VAC engaged in so called market timing transactions. The sole claim in the second amended complaint is that defendant was obligated by the covenant of good faith and fair dealing to take steps to prevent market timing in the funds related to the VAC.

Dismissal of the complaint was appropriate, since the obligation plaintiff sought to imply controverted the express terms of the contract (*see Fesseha v TD Waterhouse Inv. Servs.*, 305 AD2d 268 [2003]). Market timing is a generally lawful investment strategy that uses information about closing prices on securities in foreign exchanges to make advantageous trades on a domestic exchange. Essential to this is the market timer's ability to make transfers between accounts in the VAC by phone or other instantaneous means. Although there is no dispute that had defendant required that all transfers be executed by mail there could have been no market timing in the fund, the parties' agreement expressly permitted transfers to be made by phone, and vested sole discretion concerning the manner in which transfers could be made in defendant. Accordingly, plaintiff's allegation that defendant was required to bar instantaneous transfers is contradicted by the express terms of the agreement (*see Keifer v Sony Music Entertainment, Inc.*, 8 AD3d 107 [2004]), and contrary to plaintiff's contention, the parties'

contract was not one of adhesion (*see Brower v Gateway 2000*, 246 AD2d 246, 252 [1998]). In light of the foregoing, we need not reach defendant's argument that the complaint should also have been dismissed as time-barred. Were we to address it, we would find that the action was timely since the time to commence the action was tolled by the filing of the original punitive class action complaint (*see American Pipe & Constr. Co. v Utah*, 414 US 538, 551-554 [1974]; *Yollin v Holland Am. Cruises*, 97 AD2d 720 [1983]).

Defendant's appeal from the March 2007 order granting leave to plaintiff to file a second amended complaint terminated with entry of the judgment (*see Matter of Aho*, 39 NY2d 241, 248 [1976]). Nor is the order brought up for review from the appeal from the judgment since it does not "necessarily affect[ ]" the final judgment (CPLR 5501 [a] [1]). Accordingly, we decline to reach defendant's argument that the second amended complaint was precluded by the Securities Litigation Uniform Standards Act of 1998 (15 USC § 78bb). Were we to reach it, we would agree with the court that neither fraud nor misrepresentation are a "necessary component," either factually or legally, of plaintiff's claim for breach of the covenant of good faith (*see Xpedior Creditor Trust v Credit Suisse First Boston [USA] Inc.*, 341 F Supp 2d 258, 266 [2004]).

We have considered plaintiff's remaining contentions and find them unavailing. Concur—Lippman, P.J., Andrias, Sweeny and Renwick, JJ.