18-1120-cv
*Tobias Bermudez Chavez, et al. v. Occidental Chemical Corp.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2018

(Argued: March 4, 2019   Decided: August 7, 2019)

Docket No. 18-1120-cv

_____

TOBIAS BERMUDEZ CHAVEZ, GERARDO ANTONIO FONESCA TORRES, FRANKLIN
GUILLEN SALAZAR, GARCIA MONTES JOSE GABINO, MARIANO DE LOS ANGELES
PIZARRO, ANTONIO OSORNO OSORNO, EUSEBIO PEREZ DINARTES, ANGEL NAPTALI
AGILA SALINAS, JOSE VICENTE CAMPOS DEL PESO, GABRIEL RODOLFO CAMPOVE
ARCE, JOSE ANTONIO E. ESPINOZA, MANUEL ISAIAS ESTRADA MOSQUERA, PEDRO
RAMON GARCIA VILLON, MANUEL JESUS INGA DOMINGUEZ, JOSE VIRGILIO LOPEZ
CORREA, JUAN BAUTISTA NORIEG MOREIRA, ANGEL RAFAEL ROMERO CASTRO,
JULIAN GONZALO SUAREZ DEL ROSARIO, SIXTO TORRES FARIAS, TEODORO
FERNANDO UNAMUN CORONEL, IDELFONSO ARAUZ ARAUZ, HECTOR ARCIA,
SANTOS CAMARENA-CABALLERO, FULVIO CESAR CHAVEZ SUIRA, JOSE ANTONIO
GONZALE HERNANDEZ, VALENTIN MONTERO MENDEZ, JUSTO GERMAN OPORTO
VILCHEZ, JULIO SEVILLA FLORES, FELIX VARGAS RODRIGUEZ, LEOCADIO ZURDO
AMADOR, JULIO ABREGO ABREGO, BERNARDO ABREGO JORIETO, SIMON ABREGO
PINEDA, ONCHI ABREGO QUINTERO, DILVIO ALVAREZ MORENO, JUAN CHOLY
APARICIO, FRANCISCO DEL SOCORRO BAT MORA, CELIO BONILLA VALDEZ, PEDRO
BRICENO ESCALANTE, SANTIAGO CASTILO CASTILLO, LIBERATO CASTILO CASTILLO,
GERARDO DELEON ZAPATA, ABNEGO GUILLERMO DUGEL WILLIAMS, FELICIMO
DUGUEL MICHI, MANUEL GONZALES SANCHEZ, ERNESTO GUADAMUZ, HILARIO
JULIAN MILTON, RICARDO ADOLFO MALDONAD SMITH, JOSE MIRANDA NICO,
PANCHO MOLINA ACUNA, RAMON ABREGO, LORENZO MORALES MORALES, JULIO
MORENO MONTEZUMA, MARIO MUNOZ SANTOS, ALEJANDRO PALACIO PINEDA,
GENITO QUINTERO GONZALEZ, GREGORIO ELLINGTON, DIONICIO SANTIAGO
ABREGO, SIMON SANTOS VILLAGRA, JULIO SANTOS SANTOS, NAPOLEON SERRANO
NITI, VICTORIANO SERRANO CHICO, SAMUEL SMITH SMITH, SAMUEL TAYLOR ERA,
DEMETRIO WILLIAMS JIMENEZ, SEBASTIAN WILLIAMS MIGAR, ALVARADO ALFARFO

MIGUEL FRANCISCO, EDGAR ARROYO GONZALEZ, MARCELO COREA COREA, JOSE DAIZ BENAVIDEZ, GONZALEZ MARIN MARVIN, MIGUEL ANGEL MORALES GUZMAN, RODRIGO QUIROS CHAVARRIA, GUILLER SANDRE REYES MORA, VEGA UGALDE NORMAN, FLORENTINO GILBERTO ALCIBA MONTESARRATE, TOMAS GILBERTO ASUNCI QUIMI, ODILO CASTRO LOPEZ, JOSE SANTIAGO LOJA ALVARADO, RICARDO ALBERTO ORRALA RAMIREZ, JOSE NICANOR PACHECO URGILES, LUIS ALFONSO PALADIN ILLESCAS, MANUEL JOSE PORRAS ALVAREZ, JOSE LEONCIO PUCHA VILLAMAGUA, LEOPOLDO MAURICIO QUEZAD VITONERA, GERMASN ELEUTERIO RAMIR OYOLA, EUGENIO DE JESUS VIVAR SANCHEZ, ESTEBAN GARCIA ACOSTA, MARIANO GONZALEZ PITTI, HECTOR GUTIERREZ VICTORIA, WILLFREDO MIRANDA PATINO, JUAN DEDIOS QUINTERO, MARIO REYES SALDANA, DANIEL RODRIGUEZ MADRID, ARCENIO RODRIGUEZ GALLARDO, FERMIN ROMERO DE LEON, JAVIER ENRIQUE RUBIO MORALES, MARGARITO SALINAS MOJICA, BASILIO SALINAS MOJICA, LINO VILLARREAL CONCEPCION, JORGE LUIS AGUILAR MORA, CARLOS AGUIRRE FLORES ALVAREZ, JUAN JOSE ARGUELLO JIMENEZ, JOSE BUSTOS OSES, RAFAEL BUSTOS BUSTOS, GERMAN FALLAS HERRERA, ELIZONDO GUARIN EDUARDO, FEDERICO CLEVER MONTERO SALAS, JULIAN ALVAREZ JOVINO, NERTOR EVELINO CACAY CORDOVA, JOSE DARIO CHICA ROMERO, MARIANO CRUZ JIMENEZ GUANOQUIZA, ALCIDES HUMBERTO LUPU REYES, MANUEL BENIGNO ORTIS, MIGUEL ANGEL QUITO AREVALO, GREGORIO JUAN TORRES TENESACA, FRANCISCO OSWALDO VILLACR MENDOZA, EULOGIO APOLOGIO ZAMBRA OTERO, ALCIDES BAULES RODRIGUEZ, LAUDINO CABALLERO RIOS, AGRIPINO CAMARENA CEDENO, DOMINGO CASTILLO MORALES, DANIEL CENSION CAMANO, DANIEL ESPINOSA MITRE, OSCAR ALEXIS GANTES ARAUZ, CESAR AUGUSTO GONZALE CABALLERO, EDUARDO GONZALEZ CABALLERO, ENEDICTO JIMENEZ MIRANDA, RAFAEL MARTINEZ GONZALEZ, AURELIO MIRANDA DIAZ, MARCOS MORALES GUTIERREZ, ABRAHAM MORENO CONCEPCION, JUAN ADOLFO OLIVERO MAGUE, LEOPOLDO PENA SANJUR, PAULINO PITTY SANCHEZ, LUIS ENRIQUE NAVARRO QUINTERO, CATALINO ROSALES PINEDA, NICOLAS SANTOS MONTENEGRO, CATALINO SERRUD, SANTOS TORRES PINZON, AQUILINO VIGIL SANCHEZ, EDWIN AGUERO JIMENEZ, JORGE AGUERO RETANA, ALBERTO CONEJO CHACON, DIDIER CORDERO CISNEROS, ESTANISLAO CRUZ CRUZ, MIGUEL ANTONIO DIAZ CORDERO, DOGABERTO ESQUIVEL VALDELOMAR, JOSE GAMBOA CASTILLO, MARCOS GOLUBOAY MEJIAS, ROGER ANTONIO LOPEZ ZAMORA, RUFINO MATARRITA MORENO, JOSE FABIO NUNEZ CASTRO, CARLOS LUIS PEREIRA OROZCO, FRANCISCO PEREIRA RAMIREZ, CARLOS MANUEL QUIROS ZUNIGA, WILLIAM FELICIANO RODRIGUEZ, JOSE ANGEL ROJAS

BARQUERO, HERNAN SOLANO CASTRO, RAFAEL SOLANO SABORIO, MARIO TORRES MORA, RAFAEL VALDERRAMA GRANADOS, GREIVIN VALENCIA LOPEZ, MELECIO VARELA SOTO, VICTOR VARGAS ARIAS, NIXON MODESTO ALVARAD VASQUEZ, ROBERTO WILLIAM BARONA BENITES, LAURO OLMEDO CHACON QUICHIMBO, FRANCISCO DOMINGO CONTRER ESPINOZA, EPIFANIO ARCHIBALDO CORN LEON, MANUEL GUAICHA CARDENAS, JUAN DE JESUS HUERTA MOSQUERA, MIGUEL ANGEL INIGUEZ OCHOA, HUGO EBERIO LEON VELEZ, MILTON MEDARDO MAZA VIVANCO, ROSARIO AVELINO NICANOR VIRGILIO, GALO MIGUEL ORBE VALENCIA, JOSE NICANOR PACHECO URGILES, ERICK FRANKLIN PALOMI ROMERO, ANGEL RAFAEL ROMERO CASTRO, LUIS VINICIO SALVATI VILLA, MIGUEL ANGEL SARAGURO, JOSE FERNANDO SARMIE CABRERA, LUIS GILBERTO VASQUE LOPEZ, EUGENIO APOLINARIO VILL PRIMITIVO, MAURO GREGORIO ZERDA GUERRA, BELISARIO ATENCIO MUNOZ, LUIS ALBERTO BARRIA ARAUZ, BENEDICTO CORELLA VASQUEZ, HUMBERTO DEL CID QUINTERO, ABEL GALLARDO CONCEPCION, ALCIBIADES GOMEZ QUIEL, CIRO GUTIERREZ CORTEZ, SALVADOR MILLAN PENALBA, MANUEL MAYORGA MOREDIBU, FELIX ANTONIO QUIROZ MORANTE, EMILIANO VEGA MORALES, GONZALEZ ARAYA FRANKLIN, GERMAN EDUARDO BRAVO VALDERRAMOS, EDWIN CERDAS MASIS, JORGE LUIS CORDERO BAQUERO, JOHNNY ESPINOZA GAMBOA, ESNEY HERNANDEZ FAJARDO, JIMENEZ RAMIREZ GILBERTO, ALVARADO RODRIGUEZ WILBERT, JOSE MANUEL SALAZAR BRENES, AUDIT VARGAS ROBLES, ELVIN VARGAS BLANCO, ROLANDO VILLEGAS JIMENEZ, ELEVIO VINDAS ZAMORA, DOUGLAS ROLANDO SANCHEZ, VICENTE BARRIA ARAUZ, GENARO BONILLA QUINTERO, NOEL ENRIQUE VALDES RODRIGUEZ, MARIO ESTEBAN CACERAS HERNANDEZ, TOMAS ALBERTO CEDENO RODRIGUEZ, WILFREDO GOMEZ VARGAS, EVIDELIO GONZALEZ ACOSTA, EDWIN ENUVIN GUERRA GONZALEZ, JUAN DEDIOS BAUTISTA SANCHEZ, RONALDO MORALES VARGAS, LIONEX MORALES MONTENEGRO, ALBERTO PINEDA MARQUINEZ, RAFAEL PINEDA MARQUINEZ, FELIX ANTONIO PINEDA ESPINOSA, ERICK ELIAS PINEDA JURADO, PABLO RIVERA BUICOBO, ISRAEL SANCHEZ GONZALEZ, ADOLFO VEGA GUERRA,

*Plaintiffs - Appellees,*

v.

OCCIDENTAL CHEMICAL CORPORATION, INDIVIDUALLY AND AS A SUCCESSOR TO OTHER OCCIDENTAL CHEMICAL COMPANY OTHER OCCIDENTAL CHEMICAL

3

AGRICULTURAL PRODUCTS INC. other HOOKER CHEMICAL AND PLASTICS other OCCIDENTAL CHEMICAL COMPANY OF TEXAS other BEST FERTILIZER COMPANY,

*Defendant - Appellant.*

---

Before:     SACK, RAGGI, and CARNEY, *Circuit Judges*.

The plaintiffs filed this action in 2012 in the United States District Court for the District of Delaware, alleging that several American corporations, including Occidental Chemical Corporation, manufactured, sold, distributed, and used dibromochloropropane (DBCP), a pesticide to which the plaintiffs were exposed when they worked on banana plantations in Central and South America between the 1960s and the 1980s. They allege that as a result of their exposure, they suffered various injuries, including sterility, sexual and reproductive abnormalities, and cancer. The plaintiffs' claims against Occidental were transferred to the Southern District of New York in 2017, after which Occidental filed a motion for judgment on the pleadings, arguing, *inter alia*, that the plaintiffs' claims were time-barred under New York's three-year statute of limitations for personal-injury suits. On January 10, 2018, the district court (Paul A. Engelmayer, *Judge*) denied Occidental's motion, holding that the plaintiffs'

claims were tolled between 1993 and 2010 by the pendency of a related class action in Texas.

The questions on interlocutory appeal are (1) whether New York law recognizes "cross-jurisdictional class action tolling," i.e., tolling of a New York statute of limitations by the pendency of a class action in another jurisdiction; and (2) whether, under New York law, a non-merits dismissal of class certification can terminate class action tolling, and if so, whether the Orders at issue did so. New York's courts have yet to address these questions. A decision on these questions, either of which may be dispositive of this appeal, requires value judgments and important public policy choices that the New York State Court of Appeals is better suited to make than is this Court. We therefore CERTIFY the questions to the New York Court of Appeals.

> JOHN P. ELWOOD, Vinson & Elkins LLP, Washington, DC (D. Ferguson McNiel, III, Vinson & Elkins LLP, Houston, TX, Timothy Jay Houseal, Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, *on the brief*), *for Defendant-Appellant*.
>
> JONATHAN S. MASSEY, Massey & Gail LLP, Washington, DC (Paul J. Berks, Massey & Gail LLP, Chicago, IL, Scott M. Hendler, Hendler Flores Law PLLC, Austin TX, *on the brief*), *for Plaintiffs-Appellees*.

5

SACK, *Circuit Judge*:

This appeal presents two state-law questions that neither this Court nor New York's courts have addressed: (1) whether New York law recognizes "cross-jurisdictional class action tolling," i.e., tolling of a New York statute of limitations by the pendency of a class action in another jurisdiction; and (2) whether a non-merits dismissal of class certification can terminate class action tolling, and if so, whether the Orders at issue here, which include a "return jurisdiction" clause, did so where the plaintiffs filed a motion to reinstate their claims within six months of the case's dismissal.

The plaintiffs are agricultural workers from Costa Rica, Ecuador, and Panama, who allegedly suffered adverse health effects from exposure to the pesticide dibromochloropropane ("DBCP") between the 1960s and the 1980s, while working on banana plantations in Central and South America. In 2012, the plaintiffs filed a putative class action in the United States District Court for the District of Delaware against DBCP manufacturers and distributors, including Occidental Chemical Corp. ("Occidental"), as well as companies that owned or operated the farms where the plaintiffs worked. Their claims against Occidental were transferred by the Delaware district court to the Southern District of New York in May 2017.

6

Occidental filed a motion for judgment on the pleadings, arguing, *inter alia*, that the plaintiffs' claims were time-barred under New York's three-year statute of limitations for personal-injury suits. The district court (Paul A. Engelmayer, *Judge*) denied Occidental's motion, concluding that the plaintiffs' claims were tolled between 1993 and 2010 because of the pendency of a putative class action filed in Texas state court in 1993 (the "Texas Action"). The district court's decision was based on its view that the New York State Court of Appeals would likely (1) permit "cross-jurisdictional tolling," the tolling of claims in New York during the pendency of a class action filed in another jurisdiction; and (2) decide that the dismissal of the Texas Action on the basis of *forum non conveniens* and the denial of class certification as moot did not terminate class action tolling.

On appeal, Occidental challenges both conclusions. It argues that although New York courts have adopted the class action tolling doctrine established under different circumstances in *American Pipe Construction Co. v. Utah*, 414 U.S. 538 (1974), the New York Court of Appeals likely would not apply that doctrine in the cross-jurisdictional context. In the alternative, Occidental asserts that even if New York law permits cross-jurisdictional class action tolling, the plaintiffs' claims would still be untimely because the 1995

dismissal of the Texas Action on the grounds of *forum non conveniens* terminated any such tolling.

The district court lacked the authority to tender the issues of New York law raised before it to the New York Court of Appeals; we, though, have the ability to do so. *See* New York Court of Appeals Rules, § 500.27;[1] United States Court of Appeals for the Second Circuit Rule 27.2. The principal questions on appeal have important implications that have yet to be addressed by New York's appellate courts. In light of the dearth of precedential opinions, and the potentially far-reaching consequences for New York courts of the answer to these questions, we elect not to attempt to resolve them in the first instance, but instead to invite the Court of Appeals to address them if it so wishes. We therefore certify the following two questions to the Court of Appeals and stay resolution of this case in the interim:

1. Does New York law recognize cross-jurisdictional class action tolling, as described in this opinion?

---

[1] Whenever it appears to the Supreme Court of the United States, any United States Court of Appeals, or a court of last resort of any other state that determinative questions of New York law are involved in a case pending before that court for which no controlling precedent of the [New York] Court of Appeals exists, the court may certify the dispositive questions of law to the [New York] Court of Appeals.

N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a).

2. Can a non-merits dismissal of class certification terminate class action tolling, and if so, did the Orders at issue here do so?

## BACKGROUND

*General Factual Background*[2]

Between 1965 and at least 1985, Occidental and other U.S.-based corporations manufactured and distributed DBCP, a pesticide that was injected into the soil or sprayed over banana plantations in Costa Rica, Ecuador, and Panama, among other countries. The plaintiffs lived and worked on those plantations. The plaintiffs allege that they were never warned of the health risks posed by exposure to DBCP and were not instructed or encouraged to wear any protective gear to prevent skin absorption or inhalation of the pesticide. They allege that they suffered various injuries resulting from their exposure to DBCP, including, *inter alia*, sterility, low sperm quantity and reduced sperm quality, liver damage, an increased risk of cancer, vision loss from cornea damage, chronic skin disorders, and compromised pulmonary and respiratory systems.

---

[2] The facts set forth in this opinion are drawn from the Complaint, originally filed on June 1, 2012, in the United States District Court for the District of Delaware. App'x 14. That remains the operative Complaint in the action against Occidental before us, which was transferred to the Southern District of New York in May 2017. *See id.* at 113, 137.

The risks associated with exposure to DBCP were allegedly known by some manufacturers as early as 1961. By 1976, the U.S. Environmental Protection Agency ("EPA") had identified DBCP as a suspected carcinogen. In July 1977, Occidental allegedly discovered that 35 of 114 workers at its Lathrop, California manufacturing plant were sterile. In September 1977, the EPA prohibited DBCP's use everywhere but in a few locations in Hawaii, and even there only under restricted conditions. Occidental nevertheless continued to manufacture, sell, market, and distribute DBCP until at least 1979 for agricultural use, including on banana plantations in Costa Rica, Panama, and Ecuador.

*Procedural History*

This case is the latest in a series of putative class actions filed by agricultural workers from Central and South America against Occidental and others for DBCP-related injuries. The plaintiffs' timeliness argument relies heavily on the existence of two previous actions: one filed in Texas and the other in Hawaii. We therefore summarize those actions' procedural histories before turning to the procedural history of the case at bar.

### 1. Texas and Hawaii Class Actions

In August 1993, a group of plaintiffs brought a putative class action in Texas state court asserting claims against Occidental and others purporting to be on behalf of all persons exposed to DBCP between 1965 and 1990 in several countries, including Costa Rica, Panama, and Ecuador.[3] In April 1994, the defendants impleaded Dead Sea Bromine, a corporation indirectly owned in part by the State of Israel, which removed the case to federal court in the Southern District of Texas. The district court consolidated the action with a similar action captioned *Delgado v. Shell Oil Co.*, No. H-94-1337 (S.D. Tex.).

On April 17, 1995, the defendants filed a motion to dismiss the Texas actions on the grounds of *forum non conveniens*. The district court granted the motion on July 11, 1995 (the "July 1995 Order"). The court concluded, as an initial matter, that Dead Sea Bromine was an agent of a foreign state and that the court therefore could exercise subject matter jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 (the "FSIA"). *Delgado v. Shell Oil Co.*, 890 F. Supp. 1324, 1336-38, 1372 (S.D. Tex. 1995). The court then

---

[3] The case was originally captioned *Bermudez v. Shell Oil Co.*, No. 93-C-2290 (23rd Dist. Ct., Brazoria Cty., Tex.), and subsequently renamed, *Carcamo v. Shell Oil Co.*, No. 93-C-2290 (23rd Dist. Ct., Brazoria Cty., Tex.).

concluded that dismissal was appropriate because adequate alternative fora existed in the plaintiffs' home countries, and the balance of public and private interests tipped strongly in favor of dismissal. *Id.* at 1358-72.

The district court conditioned dismissal on the defendants "agree[ing] to waive all jurisdictional and certain limitations-based defenses." *Delgado*, 890 F. Supp. at 1372. It also noted that dismissal on the basis of *forum non conveniens* was proper only insofar as "the courts in [the countries where the plaintiffs resided or were injured] do not refuse to exercise jurisdiction over these actions." *Id.* It "denied as moot" "all pending motions . . . not otherwise expressly addressed," which included motions for class certification. *Id.* at 1375. The court did not specifically address class certification, but denied it alongside all other "pending motions" as an administrative matter instead. The court inserted a "return jurisdiction" clause at the end of its order, however, which stated:

> Notwithstanding the dismissals that may result from this Memorandum and Order, in the event that the highest court of any foreign country finally affirms the dismissal for lack of jurisdiction of any action commenced by a plaintiff in these actions in his home country or the country in which he was injured, that plaintiff may return to this court and, upon proper motion, the court will resume jurisdiction over the action as if the case had never been dismissed for [*forum non conveniens*].

*Id.*

On October 27, 1995, the defendants having met the district court's conditions for dismissal, the district court entered a "final judgment" dismissing the action (together with the July 1995 Order, the "1995 Orders"). The plaintiffs responded by filing an appeal with the United States Court of Appeals for the Fifth Circuit, which challenged the district court's exercise of subject matter jurisdiction under the FSIA.

After their claims were thus dismissed by the district court, the Costa Rica plaintiffs filed suit in Costa Rica. The Costa Rica courts dismissed their claims for lack of personal jurisdiction, however. The decision was affirmed by the Costa Rica Supreme Court.

On April 1, 1996, while the appeal to the Fifth Circuit was pending, the Costa Rica plaintiffs filed a motion in the Southern District of Texas to reinstate their claims pursuant to the "return jurisdiction" clause in the July 1995 Order. The district court denied the motion without prejudice, deferring judgment until after the Fifth Circuit resolved the plaintiffs' then-pending appeal. On October 19, 2000, the Fifth Circuit affirmed the dismissal of the plaintiffs' claims, concluding, in relevant part, that Dead Sea Bromide was an instrumentality of the State of Israel, and that the district court therefore had not erred in exercising

13

subject matter jurisdiction. *Delgado v. Shell Oil Co.*, 231 F.3d 165, 176-77 (5th Cir. 2000).

In 1997, another group of plaintiffs filed a DBCP-related class action in Hawaii state court captioned *Patrickson v. Dole Food Co.*, No. 07-1-0047 (Haw. Cir. Ct. Oct. 3, 1997). As the defendants in the Texas Action had done, the defendants in the Hawaii litigation, which included Occidental, impleaded Dead Sea Bromine. They also impleaded a second Israeli entity, Bromine Compounds, Ltd. The Israeli companies, in turn, removed the case to federal court.

On March 8, 1999, the United States District Court for the District of Hawaii dismissed the plaintiffs' claims on the basis of *forum non conveniens*. The plaintiffs appealed to the United States Court of Appeals for the Ninth Circuit, which reversed and remanded the case to the district court with instructions to remand the case in turn to Hawaii state court, concluding that the district court lacked subject matter jurisdiction under the FSIA. *Patrickson v. Dole Food Co.*, 251 F.3d 795, 808-09 (9th Cir. 2001). The defendants appealed, and the Supreme Court granted their petition for *writ of certiorari* on June 28, 2002. *Dole Food Co. v. Patrickson*, 536 U.S. 956 (2002).

The Supreme Court agreed with the Ninth Circuit. Contrary to the Fifth Circuit's holding in *Delgado*, 231 F.3d at 176-77, it concluded that neither Dead Sea Bromine nor Bromine Compounds, Ltd. was an instrumentality of the State of Israel because the State of Israel did not own a majority of either company's shares. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 477 (2003). Therefore, neither entity could invoke the FSIA provisions allowing removal of state-court actions to federal court, and the district court could not exercise subject matter jurisdiction over the plaintiffs' claims. *Id.* at 480 ("[W]e hold . . . that a foreign state must itself own a majority of the shares of a corporation if the corporation is to be deemed an instrumentality of the state under the provisions of the FSIA.").

The Hawaii plaintiffs then continued to pursue their class action in Hawaii state courts. In 2008, a Hawaii court denied the plaintiffs' motion for class certification. In 2009, it granted the defendants' motion for summary judgment, concluding that the plaintiffs' claims were time-barred. In 2014, the Intermediate Court of Appeals of Hawaii affirmed. *Patrickson v. Dole Food Co., Inc.*, 330 P.3d 389 (Haw. Ct. App. 2014). The following year, the Supreme Court of Hawaii vacated the Intermediate Court's judgment, concluding that (1) Hawaii law recognizes cross-jurisdictional tolling, and (2) the July 1995 Order did not

15

terminate such tolling because the denial of class certification was "not express" and did not "put putative members of the class on notice that the Hawai'i state statute of limitations had begun to run against them." *Patrickson v. Dole Food Co.*, 368 P.3d 959, 970-71 (2015) (internal quotation marks omitted). The case continues to be litigated in Hawaii state court.

Meanwhile, in the Texas Action, the *Carcamo/Delgado* plaintiffs filed a motion on May 13, 2003, requesting that the district court vacate its July 1995 Order in light of the Supreme Court's ruling that Dead Sea Bromine was not an instrumentality of the State of Israel. On March 12, 2004, the district court denied the motion, reasoning that the change in law did not require vacatur. It issued a final judgment denying the plaintiffs' motion to vacate the July 1995 Order but indicated that it would consider remanding the case to state court upon the filing of a properly supported motion.

On March 23, 2004, the Costa Rica plaintiffs filed a motion requesting that the district court reinstate the case and remand it to Texas state court. On June 18, 2004, the district court granted the plaintiffs' motion. It determined that under the "return jurisdiction clause" in the July 1995 Order, it had jurisdiction "to ensure that an American forum remain[ed] available to adjudicate plaintiffs'

claims if and when the highest court of a foreign country dismisse[d] them for lack of jurisdiction," and that the plaintiffs' motion was "a direct continuation of the prior proceedings over which the court expressly stated its intent to retain jurisdiction." *Delgado v. Shell Oil Co.*, 322 F. Supp. 2d 798, 813-15 (S.D. Tex. 2004). It decided that under 28 U.S.C. § 1447(c), it had power to remand a case "at any time before final judgment," and concluded that the *forum non conveniens* dismissal "was not a 'final judgment.'" *Id.* at 816 (quoting 28 U.S.C. § 1447(c)). Because *Patrickson* had "terminated whatever ancillary jurisdiction existed from the court's original (now [held] erroneous) assertion of subject matter jurisdiction over this controversy," *id.*, it remanded the case to Texas state court, *id.* at 816-17.

On April 26, 2005, following remand, the 23rd District Court of Brazoria County, Texas, granted the plaintiffs' motion to reinstate their claims. In September 2009, the plaintiffs filed a motion for class certification. The following month, the defendants attempted once more—this time unsuccessfully—to remove the case to federal court. On June 3, 2010, the Texas state court denied the plaintiffs' motion for class certification. The plaintiffs voluntarily dismissed their claims the next day.

2. Instant Action

In June 2011, approximately one year after the Texas state court had denied the *Carcamo/Delgado* plaintiffs' motion for class certification, seven DBCP-related lawsuits were filed in the United States District Court for the Eastern District of Louisiana. In September 2012, the district court dismissed those cases on statute-of-limitations grounds under Louisiana law. *Chaverri v. Dole Food Co.*, 896 F. Supp. 2d 556, 568-74 (E.D. La. 2012).

In June 2012, while the Louisiana cases remained pending, the plaintiffs in the instant action filed eight complaints in the United States District Court for the District of Delaware and one in Delaware state court. In November 2012, the federal district court consolidated the cases before it into two actions, captioned *Marquinez v. Dole Food Co.*, No. 12-cv-695 (D. Del.), and *Chavez v. Dole Food Co.*, No. 12-cv-697 (D. Del.).

The *Marquinez* defendants filed a motion for summary judgment, which the district court granted, concluding that the 1995 Order dismissing the Texas Action on the basis of *forum non conveniens* had terminated class action tolling. *Marquinez v. Dole Food Co.*, 45 F. Supp. 3d 420, 424-25 (D. Del. 2014). The plaintiffs appealed the judgment to the Third Circuit, which certified the

18

following question to the Delaware Supreme Court: "Does class action tolling end when a federal district court dismisses a matter for *forum non conveniens* and, consequently, denies as moot all pending motions . . . even where the dismissal incorporated a return jurisdiction clause . . . ?" *Marquinez v. Dow Chem. Co.*, 183 A.3d 704, 705 (Del. 2018) (internal quotation marks omitted). The Delaware Supreme Court accepted certification and on March 15, 2018, concluded that the 1995 Order did not terminate tolling because it did not "clearly, unambiguously, and finally den[y] class action status." *Id.* at 711. On May 29, 2018, after receiving the Delaware Supreme Court's response to the certified question, the Third Circuit vacated the district court's grant of summary judgment and remanded the case to the district court for further proceedings. *Marquinez v. Dole Food Co.*, 724 F. App'x 131, 132 (3d Cir. 2018).

Separately, in *Chavez*, Occidental filed a motion to dismiss for lack of personal jurisdiction, which the district court granted in part on May 4, 2017. The district court simultaneously transferred the claims against Occidental to the United States District Court for the Southern District of New York. On September 1, 2017, Occidental filed a motion for judgment on the pleadings, arguing that the plaintiffs' claims were time-barred. The district court (Paul A.

Engelmayer, *Judge*) denied the motion on January 10, 2018, concluding that

(1) the New York Court of Appeals would likely adopt cross-jurisdictional

tolling, and (2) the July 1995 Order did not terminate tolling because it did not

address class certification on the merits and contained a "return jurisdiction

clause" that anticipated the action's reinstatement. *Chavez v. Occidental Chem.*

*Corp.*, 300 F. Supp. 3d 517, 534, 537 (S.D.N.Y. 2018). In so ruling, the district court

acknowledged that its conclusion regarding cross-jurisdictional class action

"involves a controlling question of law as to which there is substantial ground for

difference of opinion and that an immediate appeal from the order may

materially advance the ultimate termination of the litigation." *Id*. at 540 (quoting

28 U.S.C. § 1292(b)). The district court then denied Occidental's motion for

reconsideration, *see Chavez v. Occidental Chem. Corp.*, No. 17 Civ. 3459 (PAE), 2018

WL 620488, at *4, 2018 U.S. Dist. LEXIS 14522, at *17 (S.D.N.Y. Jan. 29, 2018), and

Occidental moved for leave to file an interlocutory appeal, which this Court

granted on April 18, 2018.

## DISCUSSION

Occidental argues that the district court erred in denying its motion for

judgment on the pleadings because, in its view, New York law does not permit

20

cross-jurisdictional class action tolling, and, even if it did, such tolling would have ended in 1995, when the district court dismissed the Texas Action on the basis of *forum non conveniens*. The plaintiffs, unsurprisingly, disagree.

For the following reasons, we decline to determine for ourselves, at least at this juncture, whether New York law recognizes cross-jurisdictional tolling and, if so, whether the 1995 Orders terminated tolling in this case. We certify both questions to the New York State Court of Appeals instead.

## I. Standard of Review

We review *de novo* a district court's decision on a motion for judgment on the pleadings pursuant to Rule 12(c). *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011). In deciding a Rule 12(c) motion, we "accept all factual allegations in the complaint as true and draw all reasonable inferences in [the plaintiffs'] favor." *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009).

## II. Certification

Section 27.2 of the Second Circuit's Local Rules permits us, "[i]f state law permits," to "certify a question of state law to that state's highest court." 2d Cir. R. 27.2. New York law allows certification from this Court to the New York Court of Appeals for "dispositive questions" of New York law for which "no

controlling precedent of the Court of Appeals exists." N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a). We have certified questions where, *inter alia*, "state law is not clear and state courts have had little opportunity to interpret it." *Briggs Ave. LLC v. Ins. Corp. of Hannover*, 516 F.3d 42, 46 (2d Cir. 2008); *see also Tire Eng'g & Distribution LLC v. Bank of China Ltd.*, 740 F.3d 108, 114 (2d Cir. 2014) (certifying questions permitted "where the New York Court of Appeals has not spoken clearly on an issue and we are unable to predict, based on other decisions by New York courts, how the Court of Appeals would answer a certain question").

Before we certify a question, then, we consider "(1) whether the New York Court of Appeals has addressed the issue and, if not, whether the decisions of other New York courts permit us to predict[4] how the Court of Appeals would resolve it; (2) whether the question is of importance to the state and may require value judgments and public policy choices; and (3) whether the certified question is determinative of a claim before us." *Barenboim v. Starbucks Corp.*, 698 F.3d 104, 109 (2d Cir. 2012).

---

4 Presumably the panel meant "predict with confidence" since panels in general, and we in this case in particular, can make such predictions that we fear, however, are unreliable because they are based on insufficient state authority.

### III.    Application

1. *Whether New York Law Recognizes Cross-Jurisdictional Class Action Tolling*

The parties agree that the plaintiffs' claims are subject to New York's three-year statute of limitations for personal injury actions.  *See* Appellant Br. 1, 17 n.6; Appellees Br. 1, 32.  They further agree that the plaintiffs discovered their injuries—and that their claims therefore accrued under New York law—no later than August 31, 1993.  *See* N.Y. C.P.L.R. § 214-c (toxic tort claims accrue upon the "discovery of the injury by the plaintiff" or "the date when through the exercise of reasonable diligence such injury should have been discovered by the plaintiff, whichever is earlier").  Their disagreement concerns the tolling of the plaintiffs' claims: whether, under New York law, the 1995 Orders in the Texas Action suspended the time their claims were running, and, if so, for how long.

New York courts have adopted the federal law rule espoused by the Supreme Court in *American Pipe*, that the pendency of a class action filed (unlike in the present case) in New York tolls absent class members' claims.  *See, e.g.,* *Cullen v. Margiotta*, 811 F.2d 698, 719 (2d Cir. 1987) ("New York courts have . . . long embraced the principles of *American Pipe*."), *overruled on other grounds*, *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987); *Osarczuk*

23

*v. Associated Univs., Inc.*, 130 A.D.3d 592, 595, 12 N.Y.S.3d 286, 289 (2d Dep't 2015) (explaining that "New York courts have adopted [the *American Pipe*] rule" such that "commencement of a class action suit tolls the running of the statute of limitations for all purported members of the class"); *Paru v. Mutual of Am. Life Ins. Co.*, 52 A.D.3d 346, 348, 863 N.Y.S.2d 151, 152 (1st Dep't 2008) (noting in dicta that a putative class action would be tolled due to pendency of an earlier class action complaint filed in New York).

New York's courts have yet to decide, however, the issue presented in this appeal: whether New York law recognizes cross-jurisdictional class action tolling, i.e., whether an action pursued *outside* New York tolls the New York statute of limitations for absent class members' claims in New York courts. *See, e.g., Chavez*, 300 F. Supp. 3d at 530 ("New York courts have not squarely addressed whether New York law permits cross-jurisdictional tolling."); *Famular v. Whirlpool Corp.*, No. 16 Civ. 944 (VB), 2017 WL 2470844, at *7, 2017 U.S. Dist. LEXIS 8265, at *20 (S.D.N.Y. June 7, 2017) (same); *Soward v. Deutsche Bank AG*, 814 F. Supp. 2d 272, 281 (S.D.N.Y. 2011) (same).[5] The threshold question in this

---

[5] Courts in this Circuit have not arrived at a consensus in predicting whether the New York Court of Appeals would adopt cross-jurisdictional tolling. *Compare Hart v. BHH, LLC*, 323 F. Supp. 3d 560, 566 (S.D.N.Y. 2018) (predicting that the New York Court of

appeal is whether—despite the dearth of relevant case law—we can determine with some degree of confidence whether the Court of Appeals would likely conclude that New York law recognizes such cross-jurisdictional tolling. *See*

Appeals would apply cross-jurisdictional tolling), *Chavez*, 300 F. Supp. 3d at 530 (same, and noting that, as of January 2018, "[c]ourts in the [Southern District of New York] ha[d] split, 2-2, . . . in their predictions as to whether the New York Court of Appeals would apply cross-jurisdictional tolling as a matter of New York law"), *Famular v. Whirlpool Corp.*, 2017 WL 2470844, at *7-9, 2017 U.S. Dist. LEXIS 8265, at *19-23 (S.D.N.Y. June 7, 2017) (same), *and In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 6243526, at *145-46, 2015 U.S. Dist. LEXIS 147561, at *457-59 (S.D.N.Y. Oct. 20, 2015) (same), *with In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 311-12 (S.D.N.Y. 2014) (declining to recognize cross-jurisdictional tolling under New York law), *aff'd on other grounds sub nom. SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. LLC*, 829 F.3d 173 (2d Cir. 2016), *and Soward*, 814 F. Supp. 2d at 281 (same).

State and federal courts in other jurisdictions have similarly failed to agree on the significance, for purposes of the cross-jurisdictional tolling inquiry, of a state's adoption of *American Pipe* and its progeny. *Compare In re Linderboard Antitrust Litig.*, 223 F.R.D. 335, 348-51 (E.D. Pa. 2004) (predicting that the courts in Colorado, Indiana, Kansas, South Carolina, and Tennessee would adopt cross-jurisdictional tolling, in part because they had previously adopted intra-jurisdictional tolling), *Dow Chemical Corp. v. Blanco*, 67 A.3d 392, 397 (Del. 2013) (recognizing cross-jurisdictional tolling under Delaware law after noting that the *American Pipe* "analysis is equally sound regardless of whether the original class action is brought in the same or in a different jurisdiction as the later individual action"), *and Patrickson v. Dole Food Co.*, 368 P.3d 959, 968-70 (2015) (concluding, based in part on Hawaii's adoption of *American Pipe*, that Hawaii law permits cross-jurisdictional tolling), *with Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008) (declining to read cross-jurisdictional tolling rule into California law after noting that "[t]he rule of *American Pipe* . . . does not mandate cross-jurisdictional tolling as a matter of state procedure"), *Maestas v. Sofamor Danek Grp., Inc.*, 33 S.W.3d 805, 808 (Tenn. 2000) (declining to recognize cross-jurisdictional tolling under Tennessee law after noting the distinctions between cross-jurisdictional and intra-jurisdictional tolling), *and Portwood v. Ford Motor Co.*, 701 N.E.2d 1102, 1104-05 (Ill. 1983) (same, under Illinois law).

*Barenboim*, 698 F.3d at 109; *see also, e.g., State Farm Mut. Auto. Ins. Co. v. Mallela*, 372 F.3d 500, 505 (2d Cir. 2004) ("Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." (quoting *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir. 1994)). We do not think that we can.

Occidental argues that the New York Court of Appeals would likely reject cross-jurisdictional tolling. In its view, the doctrine conflicts with New York's "traditional presumption in favor of repose" and practice of "constru[ing] tolling doctrines 'as narrowly as possible,'" Appellant Br. 24 (quoting *Overall v. Estate of Klotz*, 52 F.3d 398, 404 (2d Cir. 1995)), in order to "avoid undermining [New York's] important interests in 'finality, certainty and predictability,'" *id.* (quoting *ACE Secs. Corp. v. DB Structured Prods., Inc.*, 25 N.Y.3d 581, 593 (2015)). Cross-jurisdictional tolling would weaken "the State's control over the limitations period for litigation in [New York's] courts—one of the most basic and fundamental aspects of state judicial policy—and subject[] [New York] to the choices of other sovereigns' legislatures and courts." *Id.* at 25-26. It "brings with it the possibility . . . of 'suspending the statute of limitations indefinitely into the

26

future and, in the process, undermining the very purpose of statutes of limitations.'" *Id.* at 26 (quoting *Quinn v. La. Citizens Prop. Ins. Corp.*, 118 So.3d 1011, 1022 (La. 2012) (brackets omitted)). And, Occidental argues, it invites forum-shopping. *Id.* at 29.

The plaintiffs assert to the contrary that the New York Court of Appeals would likely adopt cross-jurisdictional tolling for the same reason that New York courts adopted *American Pipe* tolling: to reduce court congestion and discourage placeholder lawsuits. Appellees Br. 22-23. "By recognizing cross-jurisdictional tolling, New York furthers its *own* interest in avoiding duplicative litigation in its own courts," a threat to which New York courts are "uniquely vulnerable" because New York is "the state of incorporation or principal place of business of many corporations." *Id.* at 32. Therefore, "if New York fails to recognize cross-jurisdictional tolling, it is more likely than other states to experience preemptive suits from class members in putative class actions who fear losing access to the New York forum." *Id.* at 33. In response to Occidental's argument that cross-jurisdictional tolling would result in an increase in forum-shopping, the plaintiffs note that New York's borrowing statute, N.Y. C.P.L.R. § 202, protects against opportunistic filing by prohibiting claims that would be untimely under either

New York's or the foreign jurisdiction's statutes of limitations. They further note that data suggest that Occidental overstates the forum-shopping threat: "[N]umerous states have adopted cross-jurisdictional tolling, but Occidental does not identify a single one that has experienced the flood of stale claims that it predicts will inundate New York." *Id.* at 31.

New York courts' adoption of *American Pipe* tolling for New York-only cases may be the most persuasive evidence of how the Court of Appeals would decide this question. As the district court observed, the principles from which *American Pipe* tolling derives—fair notice of claims to defendants, reasonable reliance by putative class members on the pending class action, and judicial efficiency—"apply with equal force in the context of cross-jurisdictional tolling." *Chavez*, 300 F. Supp. 3d at 532.

Yet that evidence is insufficient to allow this Court to predict with sufficient confidence how the New York Court of Appeals would resolve the matter. Despite some important similarities, *American Pipe* tolling and cross-jurisdictional tolling are different such that adoption of the former does not necessarily imply adoption of the latter. Unlike *American Pipe* tolling, cross-jurisdictional tolling may "render [a state's] limitations period effectively

dependent on the resolution of claims in other jurisdictions, with the length of the limitations period varying depending on the efficiency (or inefficiency) of courts in those jurisdictions." *Wade v. Danek Med., Inc.*, 182 F.3d 281, 288 (4th Cir. 1999). It may also result in opportunistic filings by forum-shopping plaintiffs. *Id.* at 287. We are not convinced that New York courts would reject cross-jurisdictional tolling because of these risks: New York courts have applied N.Y. C.P.L.R. § 205(a), a statutory provision that tolls claims following certain non-merits dismissals, in the cross-jurisdictional context. *See, e.g.*, *Stylianou v. Inc. Vill. of Old Field*, 23 A.D.3d 454, 457, 805 N.Y.S.2d 573, 573 (2d Dep't 2005). But we cannot confidently predict, in light of these differences, that the New York Court of Appeals would adopt cross-jurisdictional tolling based primarily on its adoption of *American Pipe* tolling.

2. *Effect on Cross-Jurisdictional Tolling of Non-Merits Denial of Class Certification*

Even if we were able to conclude that the New York Court of Appeals would likely adopt cross-jurisdictional tolling, that would not end our inquiry. We would still have to decide whether the Texas Action tolled the plaintiffs'

claims at least until June 1, 2009.[6]  The plaintiffs assert that the Texas Action

tolled their claims until June 3, 2010, when the Texas state court denied their

motion for class certification on the merits.  Occidental argues that the plaintiffs'

claims were tolled, if at all, until no later than October 1995, when the Southern

District of Texas issued a final judgment dismissing the Texas Action from

federal court and denying all "pending motions," including class certification, as

moot, notwithstanding the fact that the court did not address the merits of any of

the pending motions.  At the core of the parties' disagreement is the effect, for

tolling purposes, of the 1995 Orders dismissing the Texas Action on the basis of

*forum non conveniens*.

The Supreme Court has explained that, "[o]nce the statute of limitations

has been tolled, it remains tolled for all members of the putative class until class

certification is denied."  *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983).

In *Giovanniello v. ALM Media, LLC*, 726 F.3d 106 (2d Cir. 2013), we concluded that

"*American Pipe* tolling does not extend beyond the denial of class status," at which

point "[i]ndividual class members [a]re required . . . to take action to preserve

---

[6] Because the plaintiffs filed the instant action on June 1, 2012, their claims would be timely under New York's three-year statute of limitations only if filed on or after June 1, 2009.

their rights or face the possibility that their action could become time barred." *Id.* at 116. We further noted that "[t]he *American Pipe* rule is based on the idea that under Rule 23 of the Federal Rules of Civil Procedure, potential class members are protected by the commencement of a putative class action," and that "[t]his objectively reasonable reliance rationale breaks down once the district court disallows class status." *Id.* at 117.

Neither this Court nor the Supreme Court has determined, however, whether a denial of class certification must be on the merits in order to terminate class action tolling. Here, the Southern District of Texas denied class certification as an administrative matter: Because it concluded that dismissal was justified on the basis of *forum non conveniens*, it denied "all pending motions" as moot. Occidental argues that the denial of class status for any reason terminates tolling. *See* Appellant Br. 40 ("[T]he underlying reason for the termination of class status is irrelevant to tolling," which "stops upon denial of the class certification motion."). The plaintiffs assert that only a "clear and unambiguous" denial of class status on the merits ends tolling, Appellees Br. 49, because "[a]n order that does not clearly operate to terminate tolling does not adequately put absent class members on notice of the need to file individual claims to protect their interests,"

31

*id.* at 51. They further note that the 1995 Orders did not deny class status on the merits, and that the July 1995 Order contained a "return jurisdiction clause" that authorized the plaintiffs to reinstate the class action if the highest court of any foreign country affirmed the dismissal of their claims for lack of jurisdiction. *Id.* at 53. This, they claim, made it reasonable for them to continue to rely on the pendency of the Texas Action to toll their claims.

Existing case law sheds little light on whether a non-merits denial of class status necessarily terminates tolling. Few courts have addressed the issue, and there is no consensus among those that have. Some have held that denial of class status or dismissal of class action claims does not necessarily terminate tolling. *See, e.g.*, *Betances v. Fischer*, 144 F. Supp. 3d 441, 457-58 (S.D.N.Y. 2015) (explaining that "the statute of limitations was tolled during the pendency of . . . three previous actions" because "the appropriateness of a class action had not been addressed in any of th[os]e . . . actions"); *Scott v. District of Columbia*, 87 F. Supp. 3d 291, 298 (D.D.C. 2015) (concluding, in relevant part, that tolling did not begin when the court dismissed the class action claims with leave to amend, but only when the court dismissed the claims with prejudice). Others have concluded that the denial of class status for any reason terminates tolling. *See, e.g.*, *Collins v.*

*Village of Palatine*, 875 F.3d 839, 841 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 2014 (2018) (concluding that "[t]olling stops immediately when a class-action suit is dismissed—with or without prejudice—before the class is certified"); *Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 211-12 (4th Circ. 2006) (noting that "[t]he *American Pipe* rule provides a narrow exception to the fixed statutes of limitations," and concluding that, even where denial of class certification was only for administrative purposes, "no absentee class member could reasonably have relied on the named plaintiffs").

Similarly, courts are divided on the issue of the effect on tolling, if any, of the "return jurisdiction clause" in the July 1995 Order. The Delaware Supreme Court, relying in part on the July 1995 Order's inclusion of a "return jurisdiction clause" and the Costa Rica plaintiffs' motion to reinstate the action fewer than six months after the October 1995 dismissal, decided that the Texas court had not "clearly and unambiguously end[ed] the class action as a final matter." *Marquinez v. Dow Chem. Co.*, 183 A.3d 704, 713 (Del. 2018). Because, under Delaware law, "cross-jurisdictional class action tolling ends only when a sister trial court has clearly, unambiguously, and finally denied class action status," *id.*

33

at 711, the court concluded that "class-action tolling did not end in 1995," *id.* at 713.

The Fifth Circuit, which examined the issue under Louisiana law, held otherwise, albeit by non-precedential unpublished opinion: Even if cross-jurisdictional tolling were permissible, and despite the inclusion of a "return jurisdiction clause" in the July 1995 Order, "dismissal of th[e] suit in 1995 would have caused the prescriptive period to begin anew." *Chaverri v. Dole Food Co.*, 546 F. App'x 409, 413 (5th Cir. 2013) (*per curiam*) (characterizing, and agreeing with, the district court's conclusion). The *Chaverri* court largely adopted the reasoning of the United States District Court for the Eastern District of Louisiana in the case on appeal. It had concluded that Louisiana courts "d[o] not make any distinction based upon the type or manner of denial, nor d[o] they require that the denial be on the merits." *Chaverri v. Dole Food Co.*, 896 F. Supp. 2d 556, 568-69 (E.D. La. 2012), *aff'd*, 546 F. App'x 409 (5th Cir. 2013).[7]

---

[7] The United States District Court for the Eastern District of Louisiana concluded, in the alternative, that even if the July 1995 Order had not terminated tolling, the October 1995 "final judgment" did. *Chaverri v. Dole Food Co.*, 896 F. Supp. 2d 556, 569 (E.D. La. 2012) ("Per Louisiana law, the entrance of the final judgment absolutely stopped the pendency of the case and restarted prescription.").

Finally, the Hawaii Supreme Court, which, in the litigation described above, examined the issue under Hawaii law, explained that "the pendency of a class action in another jurisdiction operates to toll our state's applicable statute(s) of limitations until the court in our sister jurisdiction issues an order expressly denying a motion for class certification." *Patrickson v. Dole Food Co.*, 368 P.3d 959, 971 (2015). Applying that rule to the 1995 Orders, the court concluded—without specific reference to the "return jurisdiction clause"—that the July 1995 Order "was not an express denial of class certification; therefore, July 11, 1995 is not the date our state statute of limitations began to run again," and the plaintiffs' claims were timely filed. *Id.* It went on to note, in dicta and with little analysis, that "the Texas district court's October 27, 1995 final judgment dismissing [the Texas Action] for [*forum non conveniens*] clearly denied class certification and triggered the resumption of our state statute of limitations." *Id.*

We are aware of no controlling authority that would provide us with reliable guidance in determining whether, if New York law recognized cross-jurisdictional tolling, the 1995 Orders, which denied class status, not on the merits but as moot, and contained a "return jurisdiction clause," would terminate tolling.

35

3. *Certification of These Two Questions to the New York Court of Appeals*

In deciding whether to certify a question to the Court of Appeals, we ask (1) whether the Court of Appeals has addressed the issue and, if not, whether we can confidently predict, based on the decisions of other New York courts, how the Court of Appeals would resolve it; (2) whether the question raises an important issue that requires value judgments and public policy choices; and (3) whether the question is dispositive. *See Barenboim*, 698 F.3d at 109. We conclude that certification of both questions presented on appeal is appropriate:

*First*, as discussed above, New York courts have yet to address either question. *Second*, either question may be dispositive: If New York law does not recognize cross-jurisdictional tolling, or if either of the 1995 Orders terminates tolling, the plaintiffs' claims would be time-barred. *Third*, answering these questions will likely require significant policy judgments. The Supreme Court has long noted the public policy aspects of decisions regarding the scope of, and exceptions to, tolling doctrines and statutes of limitations.[8] Insofar as the

---

[8] *See, e.g.*, *Rotella v. Wood*, 528 U.S. 549, 555 (2000) (limitations provisions serve various policy goals, including "repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities"); *Hardin v. Straub*, 490 U.S. 536, 543 (1989) ("[a] State's decision to toll the statute of limitations . . . does not frustrate § 1983's compensation goal [but instead] enhances the

questions presented on appeal implicate the scope and viability of a tolling

doctrine that New York courts have yet to adopt, the answers to these questions

implicate the balance between victims' interest in redress, defendants' interest in

repose and accurate factfinding, and the public's interest in a well-functioning

judicial system. And insofar as cross-jurisdictional tolling might expose New

York to long periods of tolling based on class actions filed in other jurisdictions,

they directly affect New York State's "interest in managing its own judicial

system." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008).

We conclude that the New York Court of Appeals is far better suited than

we are to decide whether, under the circumstances presented, New York law

recognizes cross-jurisdictional tolling, and when such tolling ends. *See Casey v.

Merck & Co., Inc.*, 653 F.3d 95, 103-04 (2d Cir. 2011) (certifying cross-jurisdictional

tolling question to the Virginia Supreme Court because of the "lack of

authoritative state court decisions on point," the issue's "considerable importance

---

inmate's ability to bring suit and recover damages for injuries"); *Mills v. Habluetzel*, 456 U.S. 91, 99 (1982) (long periods of limitations may "present a real threat of loss or diminution of evidence, or an increased vulnerability to fraudulent claims"); *Bd. Of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 487 (1980) (statutes of limitations "have long been respected as fundamental to a well-ordered juridical system").

to the state," and the likelihood that certification would "resolve th[e] litigation as the issue[] to be certified [was] determinative of th[e] appeal").

## CONCLUSION

Determination of the applicable law "requires value judgments and important public policy choices that the New York Court of Appeals is better situated than we to make." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 42 (2d Cir. 2010). We therefore certify the following two questions to the New York Court of Appeals:

1. Does New York law recognize cross-jurisdictional class action tolling, as described in this opinion?

2. Can a non-merits dismissal of class certification terminate class action tolling, and if so, did the Orders at issue here do so?

Should the New York Court of Appeals choose to grant certification to either or both questions, then it is, of course, invited to address any other issues it deems germane or to reframe the question or questions as it deems appropriate. Consistent with our prior practice, "we do not intend to limit the scope of the Court of Appeals' analysis through the formulation of our question[s], and we invite the Court of Appeals to expand upon or alter th[ese] question[s]." *10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 126 (2d Cir. 2011).

Pursuant to N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27, and Second Circuit Rule 27.2, it is hereby ORDERED that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals this opinion as our certificate, together with a complete set of the briefs, appendices, and record filed by the parties in this Court. We direct the parties to bear equally any fees and costs that may be imposed by the New York Court of Appeals in connection with this certification. This panel will retain jurisdiction of the appeal after disposition of this certification by the New York Court of Appeals.